BOARD OF REGENTS OF the UNIVERSITY OF WISCONSIN,
Plaintiff-Respondent,

v.

DANE COUNTY BOARD OF ADJUSTMENT, Defendant,

TOWN BOARD OF MONTROSE, Laura Dulski, and Bill
Warner, Intervenors-Appellants.†

Court of Appeals

*No. 99–2662. Submitted on briefs May 19, 2000.—Decided
August 31, 2000.*

## 2000 WI App 211

(Also reported in 618 N.W.2d 537.)

†Petition to review denied.

On behalf of the intervenors-appellants, the cause was submitted on the briefs of *Laura Dulski* and *James D. Cooley* of Belleville.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *F. Thomas Creeron III*, assistant attorney general.

Before Vergeront, Roggensack and Deininger, JJ.

¶ 1. VERGERONT, J.   This appeal concerns the interpretation of "governmental use," a conditional use in the A–1 Agriculture District Exclusive under the Dane County Zoning Ordinance. The Dane County Board of Adjustment (BOA) determined that a tower for a University of Wisconsin-Madison student-run radio station was not a governmental use because the testimony failed to show that operation of such a radio station by the University of Wisconsin "is an integral part of its educational mission." The circuit court reversed that determination and the Town of Montrose, Laura Dulski, and Bill Warner appeal that determination. They contend the BOA correctly applied the law, the record supports its decision, and the circuit court erred in substituting its interpretation of the law and facts for that of the BOA.

¶ 2.   We affirm the circuit court's order reversing the BOA's decision, although we do so on different grounds. We conclude that the BOA erred in its interpretation of "governmental use," and that, applying the correct standard to the undisputed facts in this case, the proposed tower is a governmental use.

## BACKGROUND[1]

¶ 3.    Mario Gobel, a landowner in the Town of
Montrose, applied for a conditional use permit (CUP)
for the construction of a radio tower on his property,
with the intent of leasing his land to the Board of
Regents of the University of Wisconsin (Board of
Regents) to erect the tower and operate a student-run
radio station. The property is zoned A–1 Agriculture
District Exclusive (A–1 Exclusive). Gobel designated
his application as one for "governmental use," a condi-
tional use in the A–1 Exclusive District. *See* DANE
COUNTY, WIS., ORDINANCES § 10.123(3)(c).[2] The Dane
County Zoning and Natural Resources (ZNR) Commit-

---

[1] The appendices of both parties to this appeal contain docu-
ments concerning the application for the conditional use permit
(CUP) and the proceedings before the Zoning and Natural
Resources (ZNR) Committee that were not contained in the
certified record of the proceedings before the Board of Adjust-
ment (BOA) filed with the circuit court. The Board of Regents
moved the circuit court for a supplementation of the record to
include these and other documents, but the circuit court did not
grant that request. (The court did, however, allow supplementa-
tion of certain other documents that had been presented at the
hearing before the BOA but not included in the certified record.)
Both parties in the trial court attached to their briefs various
documents that were not part of the certified record, and those
are part of the appellate record. We have taken some of the facts
in the background section from these documents because they
are necessary to a complete understanding of the appeal and
they are not disputed by the parties. However, in our analysis of
the decision of the BOA, we consider only those documents
contained in the certified record of the proceeding before the
BOA.

[2] *See* Appendix for DANE COUNTY, WIS., ORDINANCES § 10.123
(1999). All references to the Dane County, Wis., Ordinances are
to the 1999 version unless otherwise noted.

tee scheduled a public hearing on the application. The threshold issue arose whether the proposed radio tower was a "governmental use" within the meaning of the ordinance. The zoning administrator opined in a memo to the committee that the proposed tower was a governmental use. The ZNR Committee adopted that view and voted to grant the conditional use permit.

¶ 4. The Town of Montrose, Dulski, and Warner (collectively Montrose) appealed to the BOA the zoning administrator's determination that the proposed tower was a governmental use, contending that his decision was based on an incorrect theory of law and was arbitrary. The issue before the BOA was limited to the zoning administrator's interpretation of "governmental use" and did not include the ZNR's decision to grant a conditional use permit.[3]

¶ 5. The following information concerning the proposed tower was provided by counsel for the Board of Regents, Professor James Hoyt of the UW-Madison School of Journalism and Mass Communication, and David Black, General Manager of WSUM (the UW-Madison student radio station) and a graduate student

---

[3] WISCONSIN STAT. § 59.694(4) (1997–98) and DANE COUNTY, WIS., ORDINANCES § 10.26(3) authorize appeals to the BOA by any person aggrieved by any decision of the zoning administrator; the BOA is authorized to hear and decide appeals where it is alleged there is error in any decision by an administrative official in the enforcement of a zoning ordinance. See § 59.694(7)(a); § 10.26(6)(a). An appeal of the grant or denial of a conditional use permit is to the county board. See DANE COUNTY, WIS., ORDINANCES § 10.255(2)(j). Apparently the Town of Montrose appealed the ZNR's decision to the Dane County Board of Supervisors and that appeal has been stayed pending resolution of the appeal to the BOA on the interpretation of "governmental use."

in Journalism and Mass Communication. The Board of Regents will own the tower and hold the Federal Communications Commission (FCC) license. The tower will be funded with student fees. Gobel will continue to own the land and farm other portions. The University of Wisconsin has twelve radio stations functioning now on various campuses and only Parkside Campus and Madison do not have a radio station. The stations vary, with some being more student-operated than others; some are public radio and some are not.

¶ 6. The operation of WSUM will be under the administration of Professor Hoyt and Black. Professor Hoyt is a member of the board of directors of the station and is the liaison to the Board of Regents. It is his responsibility to see that the station operates consistent with the educational mission of the University of Wisconsin. The station's mission statement filed with the FCC provides:

(1) The primary mission of the station will be to act in a service and outreach capacity for the students of the University of Wisconsin-Madison and people of Madison and surrounding communities. (2) The secondary mission of the station will be to provide an educational environment and valuable hands-on experience for student [sic] aspiring to a career in or with a genuine interest in broadcast communication or a related field. At this time, the University plans to use the station as a teaching and learning tool for students expressing interest in communications and broadcast experience. Interested students will have significant educational benefits from exposure to the station's operations. (3) The station will also provide an alternative source of music entertainment to the campus and community. The University has identified a need for an alternative source of music entertainment in

the area and believes this programming will serve an unserved need in the campus and surrounding community.

¶ 7. UW-Madison students may initiate independent study projects at the station with individual faculty members who will supervise them, set the requirements for the project, and grade them. Professor Hoyt and other professors teaching courses in broadcast news and management, in the School of Journalism and other departments, will use the station as a laboratory for the students in their courses.

¶ 8. After hearing this testimony, hearing other persons speak both in support of and against Montrose's appeal, receiving briefs and other submissions, and discussing their views, the BOA voted 3–1 to reverse the zoning administrator's determination on governmental use. The brief written report of the BOA's decision makes a finding that "testimony failed to show operation of a student radio station by the University of Wisconsin is an integral part of its educational mission." Although the report did not expressly so state, the majority of the BOA implicitly adopted the standard proposed by the assistant corporation counsel on behalf of the zoning administrator—that the proposed tower is a governmental use if it is an integral part of the educational mission of the university. The majority decided the facts did not meet this standard.[4]

---

[4] The assistant corporation counsel adopted this standard from language in a New York case that decided whether a new broadcasting facility and tower to replace an existing one should be allowed as an "accessory use" of Fordham University. *See New York Botanical Garden v. Board of Standards and Appeals*, 694 N.E.2d 424, 427 (N.Y. 1998). The assistant corporation counsel provided a copy of that case to the BOA, and the transcript of the discussions leading up to the BOA's decision show a

¶ 9. The Board of Regents filed a complaint in circuit court seeking certiorari review of the BOA's interpretation of "governmental use." The Town of Montrose, Dulski, and Warner moved to intervene, and their motion was granted. The BOA chose not to participate. The circuit court decided the BOA exceeded its jurisdiction and there was not substantial evidence in the record to support its decision. The court concluded there was "overwhelming evidence" the station was "an integral part of the University in its educational system," and, therefore, a governmental use.

## DISCUSSION

*Standard of Review*

¶ 10. On certiorari review, the appellate court reviews the decision of the board, not the decision of the circuit court. *See Clark v. Waupaca County BOA,* 186 Wis. 2d 300, 303, 519 N.W.2d 782 (Ct. App. 1994). We, like the circuit court, limit our certiorari review to: (1) whether the board kept within its jurisdiction; (2) whether it proceeded on a correct theory of law; (3) whether its action was arbitrary, oppressive or unreasonable and represented its will and not its judgment; and (4) whether the evidence was such that it might make the decision it did. *See id.* at 304. On this appeal, we address only the Board of Regents' challenge to the BOA's decision under the second criteria—that it made errors of law in interpreting and applying the term "governmental use."

---

concern with how the facts in the New York case compared to the evidence presented to the BOA in this case.

¶ 11. The interpretation of an ordinance is a question of law, which is generally subject to de novo review. *See Marris v. City of Cedarburg*, 176 Wis. 2d 14, 32, 498 N.W.2d 842 (1993). However, the reviewing court may accord deference to the interpretation adopted by a board or agency. *See id.* at 33. In the context of state boards and state agencies, two degrees of deference to the administrative tribunal's legal determinations have been established—due weight and great weight, each with its own set of criteria. *See UFE Inc. v. LIRC*, 201 Wis. 2d 274, 284–87, 548 N.W.2d 57 (1996).[5] Therefore, the first issue we must resolve is whether to accord deference to the BOA's interpretation of "governmental use," and, if so, how much.

¶ 12. Montrose contends we must presume the decision is correct citing, among other cases, *Miswald v. Waukesha Co. BOA*, 202 Wis. 2d 401, 550 N.W.2d 434 (Ct. App. 1996), *review denied.* However, that case concerned a decision on whether a variance should be granted, not an interpretation of an ordinance, which is a question of law that courts ordinarily review de novo. *See Marris*, 176 Wis. 2d at 32. We find more on point two decisions in which the supreme court decided that de novo review of a local board's interpretation of an ordinance was appropriate because the decision was likely to have state-wide impact, given that the lan-

---

[5] If we accord due deference, we accept the board or agency's interpretation as long as another interpretation is not more reasonable; if we accord great deference, we accept the board or agency's interpretation as long as it is reasonable, even if another interpretation is more reasonable. *See UFE Inc. v. LIRC*, 201 Wis. 2d 274, 284–87, 548 N.W.2d 57 (1996).

guage at issue appeared in the ordinances of many counties. *See Weber v. Town of Saukville*, 209 Wis. 2d 214, 223–24, 562 N.W.2d 412 (1997); *Marris*, 176 Wis. 2d at 33. The rationale in these decisions is that one county agency's interpretation of the language in a single case should not be controlling or persuasive for the many other counties that have ordinances with the same or similar language. *See Marris*, 176 Wis. 2d at 33.

¶ 13. The *Marris/Weber* rationale is applicable here because the A–1 Exclusive classification is based on WIS. STAT. § 91.71–75 (1997–98)[6] which establishes "the minimum requirements for zoning ordinances designating certain lands for exclusively agricultural use. . . ." WIS. STAT. § 91.71. That statute specifically addresses conditional uses in such districts:

> (5) Special exceptions and conditional uses are limited to those agricultural-related, religious, other utility [other than those addressed in WIS. STAT. § 91.71(4)], institutional or *governmental uses* that are consistent with agricultural use and are found to be necessary in light of the alternative locations available for such uses. The department [of Agriculture, Trade, and Consumer Protection] shall be notified of the approval of any special exceptions and conditional uses in areas zoned for exclusive agricultural use.

Section 91.75(5) (emphasis added). Because an interpretation of "governmental use" in DANE COUNTY, WIS., ORDINANCES § 10.123(3)(c) may have an impact on zoning ordinances in other counties that have A–1 Exclusive Districts, we conclude that de novo review is appropriate.

---

[6] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

¶ 14.    We interpret ordinances using the rules of construction that we apply to statutes. *See Marris*, 176 Wis. 2d at 32. We begin with the language of the ordinance, and, if it is plain, we apply the meaning to the facts at hand; if it is ambiguous, we consider such things beyond the language as scope, history, context, subject matter, and object of the ordinance. *See Schroeder v. Dane County BOA*, 228 Wis. 2d 324, 333, 596 N.W.2d 472 (Ct. App. 1999), *review denied*.

¶ 15.    At the time of this CUP application and the zoning administrator's opinion that the proposed tower was a governmental use, the Dane County Ordinances contained this definition of "governmental use": .

> (23h)   Governmental uses shall include, but not be limited to, parks, playgrounds, schools, hospitals, police and fire stations, solid waste disposal sites and recreational areas.

DANE COUNTY, WIS., ORDINANCES § 10.01(23h) (1997).[7] We conclude that the definition does not plainly iden-

---

[7] Effective March 4, 1998, this sentence was added to the definition: "For purposes of this chapter, a school is not a governmental use." At the same time, schools were expressly removed from the definition of "religious use," DANE COUNTY, WIS., ORDINANCES § 10.01(51a), and a definition of "schools" was added that provided: "Schools means any private, public or religious school but does not include either truck driving schools or construction equipment operator schools unless expressly stated otherwise in this chapter." Section 10.01(55m). The explanation for these changes was that "schools, whether church-related or government related or private, are generally conditional uses in the same districts: this amendment only removes an artificial distinction. . . . No substantive change is

tify what uses are "governmental uses" beyond those specified; therefore, it is ambiguous. Accordingly, we will look to extrinsic aids as appropriate in deciding upon the correct interpretation.

¶ 16. The Board of Regents contends any activity a unit of government has the statutory authority to engage in is a "governmental use."[8] It emphasizes that the list of uses in DANE COUNTY, WIS., ORDINANCES § 10.01(23h) is one example only and is expressly non-exclusive. Montrose contends any governmental use

intended." Ord. Amend. No. 16 (1997–98). The distinction was considered artificial because the type of school had no relation to its land use impact. *See* Memo from Mark Roffers, RE: Staff Description of Ordinance Amendment #16, 1997–98 (Oct. 21, 1997). Accordingly, "schools" replaced "private schools" as a separate conditional use in A–1 Exclusive, *see* DANE COUNTY, WIS., ORDINANCES § 10.123(3)(g), and a number of others districts. These amendments have no bearing on our analysis because they occurred after the application for the CUP for the proposed tower and do not shed any light on the issue before us on this appeal.

[8] The Board of Regents informs us that it does not rely on the analysis of accessory use in *New York Botanical Garden*, 694 N.E.2d at 427, from which the assistant corporation counsel derived the standard it advocated before the BOA, *see* footnote 4, but relies only on the finding by the zoning body's determination in that case that "radio stations and their attendant towers are clearly incidental to and customarily found on college campuses . . . all over the United Sates" and are also "customarily found in connection with an educational institution." *Id.* at 428. Montrose disputes the applicability of *New York Botanical Garden* for any purpose. We agree with both parties that the analysis in that case does not assist in interpreting "governmental use" in the Dane County Ordinances, and we further conclude that findings based on evidence in that case are not relevant to whether, on certiorari review, we affirm or reverse the decision of the BOA.

not listed must belong to the same class as the specific examples pursuant to the doctrine of *ejusdem generis*. Under that rule, where a general term is preceded or followed by a series of specific terms that have a common element, the general term is viewed as being limited to items of the same type or nature as those specifically enumerated. *See State v. Campbell*, 102 Wis. 2d 243, 246–47, 306 N.W.2d 272 (Ct. App. 1981). Montrose contends the commonality among those listed is that each is a "traditional government function or obligation" and a "service we as citizens expect government to provide," and a student-run radio station does not share those commonalities because it is an "inessential amenity."

¶ 17. As a starting point in our analysis, we observe that conditional uses are often not defined with specificity because their purpose is to "confer a degree of flexibility in the land use regulations. . . . '[I]f the purposes of zoning are to be accomplished, the master zoning restrictions or standards must be definite while the provisions pertaining to a conditional use . . . must of necessity be broad and permit an exercise of discretion.' " *Weber*, 209 Wis. 2d at 225–26 (citations omitted). Montrose's interpretation of governmental use is narrow—intentionally so, Montrose explains, because such narrowness is necessary to preserve the agricultural character of A–1 Exclusive Districts. However, it is not necessary to narrow the definition of "governmental use" in order to ensure that the requirements of WIS. STAT. §§ 91.71–91.80 are met, because that purpose is accomplished by the standards imposed for all conditional uses in A–1 Exclusive Districts. In keeping with the requirements in WIS. STAT. § 91.75(5) that specified conditional uses, which include "govern-

mental uses," are to be "consistent with agricultural use and . . . necessary in light of the alternative locations available for such uses," DANE COUNTY, WIS., ORDINANCES § 10.123(3)(a) provides:

(a)   Standards applicable to conditional uses in the A–1 Exclusive Agriculture District. The Department of Agriculture, Trade and Consumer Protection shall be notified of the approval of any conditional use permit. In passing applications for conditional use permits the committee shall consider the following relevant factors:

1.   Standards applicable to conditional uses in the A–1 Agriculture District (Exclusive). Consumer Protection shall be notified of the approval of any conditional use permit. In passing applications for conditional use permits the committee shall consider the following relevant factors:

a.   The statement of purposes of the zoning ordinance and the A–1 District.

b.   The potential for conflict with agricultural use.

c.   The need of the proposed use for a location in an agricultural area.

d.   The availability of alternative locations.

e.   Compatibility with existing or permitted use on adjacent lands.

f.   The productivity of the lands involved.

g.   The location of the proposed use so as to reduce to a minimum the amount of productive agricultural land converted.

h.   The need for public services created by the proposed used.

i.   The availability of adequate public services and the ability of affected local units of government to provide them without an unreasonable burden.

j. The effect of the proposed use on water or air pollution, soil erosion and rare or irreplaceable natural resources.

¶ 18. Montrose's position that the proposed tower is not in keeping with the statutory requirements for A–1 Exclusive Districts because of its size, obtrusiveness, lights, and other features is properly presented in the CUP process and does not necessitate interpreting the term "governmental use" narrowly. Moreover, "governmental use" is a conditional use in most of the other zoning districts under the Dane County Ordinance. Nothing in the language of DANE COUNTY, WIS., ORDINANCES §§ 10.01(23h) (1997) and 10.123, or any other section of the ordinance brought to our attention, suggests the term is to be interpreted differently in the A–1 Exclusive District than in the other districts.

¶ 19. We also do not agree with Montrose that application of the doctrine *ejusdem generis* provides a satisfactory resolution. The elements Montrose derives from the list of specific governmental uses—obligations of government, necessary services or functions, and traditionally provided by government—are not common to all the listed uses. Hospitals, for example, are most often non-governmental, and although counties and cities may establish hospitals, *see, e.g.,* WIS. STAT. §§ 66.47, 51.09, they are not required to do so. Parks and recreational areas, to take two more examples, appear to be amenities rather than necessities, and towns and villages are authorized to maintain parks, but are not required to do so. *See* WIS. STAT. § 27.13.

¶ 20. Even if we take "traditionally provided by government" as the touchstone for "governmental use," significant questions of interpretation remain. The State of Wisconsin has provided a university education

since 1848, which certainly makes university education a service "traditionally provided by government." Recognizing this, Montrose proposes we focus not on the broad service of university education but the particular service involved in this CUP—a student-run radio tower—and ask whether it is an obligation of the University of Wisconsin, necessary to its educational mission, and a service or function the University of Wisconsin has traditionally provided. We reject this approach because these requirements are unrelated to the purposes of zoning. *See* WIS. STAT. § 59.69(1)[9]; DANE COUNTY, WIS., ORDINANCES § 10.22.[10] Under this

---

[9] WISCONSIN STAT. § 59.69(1) provides:

Planning and zoning authority. (1) PURPOSE. It is the purpose of this section to promote the public health, safety, convenience and general welfare; to encourage planned and orderly land use development; to protect property values and the property tax base; to permit the careful planning and efficient maintenance of highway systems; to ensure adequate highway, utility, health, educational and recreational facilities; to recognize the needs of agriculture, forestry, industry and business in future growth; to encourage uses of land and other natural resources which are in accordance with their character and adaptability; to provide adequate light and air, including access to sunlight for solar collectors and to wind for wind energy systems; to encourage the protection of groundwater resources; to preserve wetlands; to conserve soil, water and forest resources; to protect the beauty and amenities of landscape and man-made developments; to provide healthy surroundings for family life; and to promote the efficient and economical use of public funds. To accomplish this purpose the board may plan for the physical development and zoning of territory within the county as set forth in this section and shall incorporate therein the master plan adopted under s. 62.23 (2) or (3) and the official map of any city or village in the county adopted under s. 62.23 (6).

[10] DANE COUNTY, WIS., ORDINANCES § 10.22 provides:

**Interpretation and Application.** In interpreting and applying the provisions of this ordinance they shall be held to be minimum requirements for the promotion of health, safety, conve-

approach, a traditional and necessary service or function that a governmental unit is obligated to provide may be considered for a conditional use, whereas a new or authorized, but not required, function or service with less impact on land use may not be considered for a conditional use.

¶ 21. Governmental units have wide discretion in how they carry out their statutory duties, a governmental unit often provides improvements or innovations in services and functions, and government is often authorized to provide what may be considered "amenities" as well as what is considered "necessary." Once a governmental unit has decided to provide a service or function that it is authorized to provide, we see no benefit from the perspective of the regulation of land use in having zoning officials or boards decide whether that service or function is a traditional one for government or necessary for the governmental unit to carry out its statutory duty: the land use concerns may be addressed in the process established for granting or denying a conditional use permit.

¶ 22. Montrose also contends the radio tower is a proprietary rather than a governmental use. However, the government/proprietary distinction discussed in

nience, morals, comfort and general welfare. It is not intended by this ordinance to interfere with or abrogate or annul any easements, covenants or similar agreements between parties, nor is it intended by this ordinance to repeal, abrogate, annul or in any way impair or interfere with any existing provisions of law or ordinance, or any rules, regulations or permits previously issued or adopted, or which may be issued or adopted according to law relating to use, occupancy, location or height of the buildings or premises; provided, however, that when this ordinance imposes a greater restriction upon the use, occupancy, location or height of buildings or premises than imposed by such existing provisions of law or ordinance, or by such rules, regulations or permits, the provisions of this ordinance shall control.

the treatises Montrose cites in its brief arises in the context of deciding whether a governmental unit is immune from local zoning ordinances; this is an issue only when legislative intent is unclear as to whether the zoning ordinances apply to the governmental units. *See, e.g.,* 4 EDWARD H. ZIEGLER, RATHKOPF'S THE LAW OF ZONING AND PLANNING § 53.02–.05 (4th ed. 1996). In this case, there is no dispute whether the zoning ordinance applies to the governmental unit: under WIS. STAT. § 13.48(13), the State and its agencies are subject to applicable municipal zoning ordinances. The issue before us is how to interpret the term "governmental use" in the zoning ordinance that applies to the Board of Regents, and we see no need to resort to case law developed in a different context. If the proposed tower is a governmental use, the Board of Regents is not thereby immune from zoning restrictions: the requirements for a conditional use then apply to it.[11]

---

[11] In *Green County v. Monroe*, 3 Wis. 2d. 196, 87 N.W.2d 827 (1958), which Montrose cites in support of applying the governmental/proprietary distinction, the issue was whether a city's zoning ordinance applied to a county, such that the city could prohibit the construction of a county jail. The court concluded that "[t]he general words of the statutes conferring zoning powers on cities cannot be construed to include the state, or in this instance the county, when in conflict with special statutes governing the location and construction of a county jail." *Id.* at 202. In the course of its decision, the court quoted a treatise that summarized the majority rule that, unless a different intent is clear, " 'states, municipalities, the Federal Government and other public subdivisions, are *not* to be bound by the requirements of a zoning ordinance, especially where the . . . buildings are used for 'Governmental' and not merely for 'Proprietary' uses.' " *Id.* at 199 (emphasis added) (citations omitted). The "governmental/ proprietary distinction" was not discussed by the court beyond the citation to the treatise.

828

¶ 23. For similar reasons, we decline Montrose's invitation to look to the "balancing of interest" test employed by some jurisdictions to resolve intergovernmental zoning disputes when there is no clear expression of legislative intent concerning whether states and state agencies are subject to local zoning ordinances. Montrose proposes this as helpful in identifying the pertinent policy concerns involved in this appeal. However, because of WIS. STAT. § 13.48(13) there is no need to resort to such a test, and the rules of statutory construction that apply to construing ordinances are sufficient to construe and apply the ordinance provisions at issue.

¶ 24. We conclude that the correct interpretation of "governmental use" in DANE COUNTY, WIS., ORDINANCES §§ 10.01(23h) (1997) and 10.123(3)(c) is any service, function, or facility that a governmental unit is authorized by statute to provide (assuming the governmental unit is otherwise subject to the zoning ordinance). This interpretation leaves to governmental units the decision how best to carry out their statutory obligations and how best to use their statutory powers, gives zoning authorities the flexibility that is generally desirable with conditional uses, and does not interfere with the standards for granting or denying conditional use permits in A–1 Exclusive Districts that is mandated by WIS. STAT. § 91.75 and reflected in § 10.123(3)(a)1.

¶ 25. Montrose next contends that, even if we interpret "governmental use" in this way, we must nevertheless exclude "communication towers," because these are specifically defined and regulated, see DANE COUNTY, WIS., ORDINANCES §§ 10.01(78m) and 10.194, and specifically allowed as conditional uses in certain

other districts,[12] but not in A–1 Exclusive. Moreover, asserts Montrose, in all but one of these other districts both governmental uses and communication towers are conditional uses, showing that the former does not include the latter.[13] Montrose also points out that when the specific definition and regulation of communication towers were added to the ordinance, communication towers were added as a conditional use in the M–1 Industrial District and changed from a permitted to a conditional use in the CO–1 Conservancy District, but were not added to the A–1 Exclusive District. *See* Ord. Amend., No. 57 (1996–97). According to Montrose, this is additional proof that the intent was to exclude all communication towers from A–1 Exclusive Districts.

¶ 26.  We do not agree with Montrose that other sections of the ordinance, or the history of the amendments concerning communication towers, show an intent to exclude communication towers from the definition of governmental uses. Rather, where governmental uses and communication towers are both listed as conditional uses, private developers of communication towers may apply for conditional use permits. However, where communication towers are not listed as a conditional use but governmental uses

---

[12]*See* DANE COUNTY, WIS., ORDINANCES § 10.12(3)(b); DANE COUNTY, WIS., ORDINANCES § 10.13(2)(j); DANE COUNTY, WIS., ORDINANCES § 10.14(2)(j); DANE COUNTY, WIS., ORDINANCES § 10.15(2)(k); DANE COUNTY, WIS., ORDINANCES § 10.155(2)(b).

[13]*See* DANE COUNTY, WIS., ORDINANCES § 10.12(3)(b); DANE COUNTY, WIS., ORDINANCES § 10.13(2)(j); DANE COUNTY, WIS., ORDINANCES § 10.14(2)(j); DANE COUNTY, WIS., ORDINANCES § 10.15 (2)(k).

are, then only a governmental unit may apply for a conditional use permit for a communication tower. *Cf. Madison Landfills, Inc. v. Dane County*, 183 Wis. 2d 282, 292–93, 515 N.W.2d 322 (Ct. App. 1994) (there, in the context of a holding not applicable here, we recognized that, since governmental uses and sanitary landfills are listed as separate conditional uses in A–2 districts, *see* DANE COUNTY, WIS., ORDINANCES § 10.126(3)(j) and (h), both governmental and non-governmental landfills may be conditional uses in those districts; but only the former may be a conditional use in A–1 Exclusive Districts, because sanitary landfills are not separately listed as a conditional use). Had the drafters of the ordinance or the amendment wanted to exclude "communication towers" from the definition of "governmental uses" in DANE COUNTY, WIS., ORDINANCES § 10.01(23h) (1997), or from DANE COUNTY, WIS., ORDINANCES § 10.123(3)(c), they could have done so. *Compare* DANE COUNTY, WIS., ORDINANCES § 10.145(3)(a) (allowing as a conditional use in Exposition District "governmental uses other than governmental offices").

¶ 27.   Having decided upon a definition of governmental use, we next consider whether the proposed tower comes within that definition based upon the evidence presented to the BOA. Because the evidence essential to the application of the standard is not in dispute, there is no need to remand to the BOA, and we decide this question as a matter of law.

¶ 28.   The Board of Regents is an administrative agency within the executive branch of state government, *see* WIS. STAT. §§ 15.01(9), 15.91, and is responsible for the governance of the University of Wisconsin system, *see* WIS. STAT. § 36.09(1). The mission of the system is:

(2) [T]o develop human resources, to discover and disseminate knowledge, to extend knowledge and its application beyond the boundaries of its campuses and to serve and stimulate society by developing in students heightened intellectual, cultural and humane sensitivities, scientific, professional and technological expertise and a sense of purpose. Inherent in this broad mission are methods of instruction, research, extended training and public service designed to educate people and improve the human condition. Basic to every purpose of the system is the search for truth.

WIS. STAT. § 36.01(2). The Board of Regents is charged with "determin[ing] the educational programs to be offered in the system," and "establish[ing] policies to guide program activities to ensure that they will be compatible with the missions of the institutions of the system." Section 36.09(1)(c), (d). The Board of Regents is authorized to possess and lease property with certain exceptions not applicable here. *See* WIS. STAT. § 36.11(1).

■■

¶ 29.   The undisputed evidence presented to the BOA is that, whatever the origins of the effort to establish a student-run radio station, the Board of Regents has chosen to acquire an FCC license in its name, lease the land in its name, and allocate funds to construct and maintain the proposed tower. The other campuses in the system have similar stations, except Madison and Parkside. The station will be run by university students, with oversight by faculty, will be available to university students generally, and will offer independent study opportunities for students as well as laboratory experiences in certain courses offered by the university. We conclude as a matter of law that the proposed tower constitutes a "governmental use"

within the meaning of DANE COUNTY, WIS., ORDINANCES §§ 10.01(23h) (1997) and 10.123(3)(c) and, therefore, may be a conditional use in the A–1 Exclusive District.

¶ 30. Accordingly, we affirm the circuit court's order reversing the decision of the BOA and ordering the BOA to reinstate the zoning administrator's decision that the proposed radio tower is a governmental use.

*By the Court.*—Judgment affirmed.

## APPENDIX

DANE COUNTY, WIS., ORDINANCES § 10.123(1)–(3) (1999) provides:

**A–1 Agriculture District (Exclusive). (intro.)** This district is in effect in those towns which make the election under sub. (1)(c) below. (Footnote omitted.)

(1)(a) *Statement of purpose.* The purposes of the A–1 Exclusive Agriculture are to: preserve productive agricultural land for food and fiber production; preserve productive farms by preventing land use conflicts between incompatible uses and controlling public service costs; maintain a viable agricultural base to support agricultural processing and service industries; prevent conflicts between incompatible uses; reduce costs for providing services to scattered nonfarm uses; pace and shape urban growth; implement the provisions of the county agricultural plan when adopted and periodically revised; and comply with the provisions of the Farmland Preservation Law to permit eligible landowners to receive tax credits under section 71.09(11) of the Wisconsin Statutes.

(b) *Lands to be included within the A–1 Exclusive Agriculture.* This district is generally intended to apply to lands in productive farm operations

including: lands historically exhibiting good crop yields or capable of such yields; lands which have been demonstrated to be productive for dairying, livestock raising and grazing; other lands which are integral parts of such farm operations; land used for the production of specialty crops such as mint, sod, fruits and vegetables; and lands which are capable of productive use through economically feasible improvements such as irrigation.

(c) *Applicability.* This section shall apply only to those towns which have filed a resolution with the county clerk indicating the election of the town to come under provisions of this district. Towns which have filed resolutions indicating acceptance of the exclusive agriculture district prior to the date of this amendment shall continue to be under the provision of this section.

(2) *Permitted uses.* (a) Agricultural uses. (b) Residence for farm owner/operator. Substantial income must be derived from the farm operation.

(bm) Residences for owners of at least 35 acres of land who were approved by the Dane County Zoning & Natural Resources Committee under the site approval process between November 1, 1992 and April 14, 1994 shall be considered a permitted use.

(c) Secondary farm residences which are occupied by a person who, or a family at least one member of which, earns a substantial part of his or her livelihood from farm operations on the farm.

(d) Rental of existing or secondary residences no longer utilized in the operation of the farm.

(e) Day care for not more than 8 children.

(f) Utility services as defined in section 10.01(81) and small scale electric generating stations not requiring approval under section 196.941 of the Wis. Stats.

(g) Road side stands.

(h) Structures and improvements that are consistent with agricultural uses.

(i) Home occupations as defined in section 10.01(25) of this ordinance.

(3) *Conditional uses in the A–1 Exclusive Agriculture District.* (a) Standards applicable to conditional uses in the A–1 Exclusive Agriculture District. The Department of Agriculture, Trade and Consumer Protection shall be notified of the approval of any conditional use permit. In passing applications for conditional use permits the committee shall consider the following relevant factors:

1. Standards applicable to conditional uses in the A–1 Agriculture District (Exclusive). Consumer Protection shall be notified of the approval of any conditional use permit. In passing applications for conditional use permits the committee shall consider the following relevant factors:

a. The statement of purposes of the zoning ordinance and the A–1 District.

b. The potential for conflict with agricultural use.

c. The need of the proposed use for a location in an agricultural area.

d. The availability of alternative locations.

e. Compatibility with existing or permitted use on adjacent lands.

f. The productivity of the lands involved.

g. The location of the proposed use so as to reduce to a minimum the amount of productive agricultural land converted.

h. The need for public services created by the proposed used.

i. The availability of adequate public services and the ability of affected local units of government to provide them without an unreasonable burden.

j. The effect of the proposed use on water or air pollution, soil erosion and rare or irreplaceable natural resources.

(b)  Single family dwellings or mobile homes occupied by parents or children of the farm operator and including dependency living arrangements. Said residences shall be subject to the requirements specified in s. 10.123(2)(b).

(c)  Governmental uses.

(d)  Religious uses.

(e)  Separation of farm dwellings and related structures which existed prior to the effective date of this ordinance and which remain after farm consolidation.

(f)  Limited family businesses subject to s. 10.192.

(g)  Schools.

(h)  Horse boarding stables, riding stables, hay and sleigh rides.

(i)  Mineral extraction operations. Mineral extraction operations require a description of the operation, a site plan and a reclamation plan and are otherwise subject to section 10.191.

(j)  Sale of agricultural and dairy products not produced on the premises and incidental sale of pop and candy.

(k)  Asphalt plants or ready-mix concrete plants for production of material to be used in construction or maintenance of public roads, to be limited in time to project duration.

(L)  Farm family business for retail sales of bridles, saddles, grooming supplies and related items at a horse boarding or riding stable facility. Said use shall be limited to a maximum of 150 sq. ft. of floor space.

(m)  The seasonal storage of recreational equipment and motor vehicles owned by private individuals other than those residing on the prem-

ises, such storage to be in existing accessory farm buildings. The storage of a dealer's inventory or the construction of any new buildings for storage shall be considered a commercial use and subject to the provisions of this ordinance.