Leonard CHMILL, Plaintiff-Respondent,

v.

LAUDERDALE LAKES LAKE MANAGEMENT DISTRICT, a/k/a
Lauderdale Lakes Protection and Rehabilitation
District, Defendant-Appellant.†

Court of Appeals

*No. 02–0475. Submitted on briefs September 26, 2002.—Decided
October 23, 2002.*

2002 WI App 285

(Also reported in 653 N.W.2d 900.)

† Petition to review denied 1-14-03.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Patrick J. Hudec* and *Gabrielle Boehm* of *Hudec Law Offices, S.C.*, East Troy.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Berwyn B. Braden* of *Braden & Olson*, Lake Geneva.

Before Brown, Anderson and Snyder, JJ.

¶ 1. SNYDER, J. Lauderdale Lakes Lake Management District (Lake District) appeals from a judgment granting Leonard Chmill's petition for certiorari relief wherein Chmill alleged that the Lake District did not act according to law when it adopted a tax levy of $32,400 over and in addition to the announced budget of $182,574 for the Lake District. The Lake District

argues that the circuit court erred in granting the certiorari petition because all statutory notice requirements were met and once these requirements were met, the electors and property owners had the authority to take any action specified by statute. We disagree that all statutory notice requirements were met and affirm the judgment of the circuit court.

## FACTS

¶ 2.  The facts are generally undisputed. The Lake District was established by the Walworth county board pursuant to statutory authority. In a publication dated August 20, 2000, entitled *District Dialogue,* the Lake District announced its annual meeting to take place on September 2, 2000, in the town of LaGrange. The *District Dialogue* was mailed to all property owners within the district.

¶ 3.  In addition, on August 23 and August 30, 2000, the Lake District published a notice containing the meeting agenda and the proposed 2001 budget in the *Elkhorn Independent.* The *District Dialogue* reported that programs planned for the next year would be discussed at this annual meeting. The *District Dialogue* also noted that at the meeting, the Lake District would be asking for approval of the 2001 budget. Furthermore, the *District Dialogue* stated that some work had been completed on the water safety patrol program and progress on the program would be reported at the annual meeting.

¶ 4.  The *District Dialogue* further contained a two-page summary of the water safety patrol proposal which noted that the Lake District and the town of LaGrange were in discussions relative to the town disbanding its police department and the Lake District

assuming control of water safety patrol on the lake. A presentation to the town of LaGrange town board was summarized and stressed the Lake District's ability to handle water safety patrol; the *District Dialogue* author indicated that water safety patrol was being compromised by a feud between the town police chief and the town. The *District Dialogue* proposed the following questions to be addressed at the Lake District's annual meeting:

> 1. Is the lake district community in favor of continuing the pursuit of replacing the town police department with a lake district water safety patrol? We are prepared to accept the financial responsibility of that action.

> 2. If that vote is favorable, and the town continues to resist dropping their operation, should the district pursue alternative strategies to achieve our goal of increased coverage? There are several options which will be explained at the annual meeting.

¶ 5.   On the next page of the *District Dialogue,* the proposed budget was discussed. The proposed budget called for only a slight increase over the year 2000 budget, $182,574 compared to year 2000's $174,288 budget. The language of the proposed budget explained the reasons for the increase but made no mention of water safety patrol. Nowhere in the *District Dialogue* or the proposed budget did it mention any amounts for the water safety patrol program.

¶ 6.   In the publication notice in the *Elkhorn Independent,* the same agenda items were listed, including a proposed 2001 budget of $182,574; however, the publication notice did not include any reference to water safety patrol or any amounts to be budgeted for it.

¶ 7. At the annual meeting on September 2, 2000, ballots were distributed with reference to the water safety patrol with boxes where potential voters could vote yes or no. During the meeting, a great deal of discussion addressed water safety patrol. Members of the district board summarized the discussions that had taken place with the town board and then suggested that the Lake District set up a water safety patrol. One of the board members estimated that on an average over a number of years the cost of operating a water safety patrol would be $32,400. Persons present were then asked to vote on whether to adopt the water safety patrol, including approval of the $32,400 budget.

¶ 8. The water safety patrol proposal passed. The treasurer of the Lake District subsequently certified the annual budget to the town of LaGrange town clerk in the amount of $214,974, which included the $32,400 water safety patrol budget, levied and collected against all properties in the Lake District as part of the real estate tax bills sent out in December 2000. On February 28, 2001, Chmill filed a petition for certiorari review challenging the actions of the electors at the annual meeting, including the authority to adopt a tax levy.

¶ 9. The circuit court found that the Lake District's decision to form a water safety patrol and the assessment of a $32,400 tax levy to finance it were void for failure to comply with the notice requirements of WIS. STAT. § 65.90(1) and (3) (1999–2000).[1] The circuit court prohibited the collection of the tax levy or, if already collected, ordered it refunded.

¶ 10. After a motion for reconsideration, the circuit court entered an amended judgment on January

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

14, 2002, which again held that the action by the Lake District to form a water safety patrol and the assessment of the $32,400 tax levy were void; however, the circuit court withdrew the previous order that the tax levy be refunded. The Lake District appeals.[2]

## DISCUSSION

¶ 11.   Chmill argues that the Lake District failed to follow the notice requirements of WIS. STAT. § 65.90. The Lake District argues that all statutory notice requirements were met because the provisions of § 65.90 were not applicable to written notices but only to electors at the annual meeting. We disagree with the Lake District.

¶ 12.   On certiorari review, the appellate court reviews the decision of the Lake District, not the decision of the circuit court. *See Bd. of Regents of Univ. of Wis. v. Dane County Bd. of Adjustment*, 2000 WI App 211, ¶ 10, 238 Wis. 2d 810, 618 N.W.2d 537, *review denied*, 2001 WI 43, 242 Wis. 2d 544, 629 N.W.2d 784 (Wis. Mar. 6, 2001) (No. 99–2662). The scope of our certiorari review is limited to whether the Lake District (1) acted within its jurisdiction; (2) proceeded on a correct theory of law; (3) was arbitrary, oppressive or unreasonable; or (4) might have reasonably made the order or finding it made based on the evidence. *Antisdel v. City of Oak Creek Police & Fire Comm'n*, 2000 WI 35, ¶ 13, 234 Wis. 2d 154, 609 N.W.2d 464. Furthermore, the interpretation of a statute and its application to a

---

[2] Chmill filed but later voluntarily dismissed a cross-appeal in this matter.

set of facts are questions of law we review de novo. *Reyes v. Greatway Ins. Co.*, 227 Wis. 2d 357, 364–65, 597 N.W.2d 687 (1999).

¶ 13. WISCONSIN STAT. ch. 33 addresses public inland waters; WIS. STAT. § 33.30 addresses the annual meeting of lake districts[3] and states, in relevant part:

> **(2)** The annual meeting shall be preceded by written notice mailed at least 10 days in advance of the meeting to all electors within the district and owners of property within the district, whose address is known or can be ascertained with reasonable diligence, and to the department. The district board of commissioners may substitute a class 2 notice, under ch. 985, in lieu of sending written notice to electors residing within the district.

Both parties agree that this section applies to the Lake District and the Lake District must comply with it.

¶ 14. WISCONSIN STAT. § 33.30(3) states:

> **(3)** At the annual meeting, electors and property owners shall do all of the following:
>
> . . . .
>
> (b) Approve a budget for the coming year. *The budget shall separately identify the capital costs and the costs of operation of the district, shall conform with the applicable requirements under s. 65.90 and shall specify any item that has a cost to the district in excess of $10,000.* (Emphasis added.)

WISCONSIN STAT. § 65.90, as provided in § 33.30(3), addresses municipal budgets and states, in relevant part:

> **(1)** Unless otherwise provided, in this section,

---

[3] A district is defined as a "public inland lake protection and rehabilitation district." WIS. STAT. § 33.01(3).

"municipality" means each county other than counties having a population of 500,000 or more, each city, excepting cities of the 1st class, village, town, school district, technical college district and all other public bodies that have the power to levy or certify a general property tax or budget. Every municipality shall annually, prior to the determination of the sum to be financed in whole or in part by a general property tax, funds on hand or estimated revenues from any source, formulate a budget and hold public hearings thereon.

(2) Such budget shall list all existing indebtedness and all anticipated revenue from all sources during the ensuing year and shall likewise list all proposed appropriations for each department, activity and reserve account during the said ensuing year. Such budget shall also show actual revenues and expenditures for the preceding year, actual revenues and expenditures for not less than the first 6 months of the current year and estimated revenues and expenditures for the balance of the current year. Such budget shall also show for informational purposes by fund all anticipated unexpended or unappropriated balances, and surpluses.

(3)(a) A summary of the budget required under sub. (1) and notice of the place where the budget in detail is available for public inspection and notice of the time and place for holding the public hearing thereon shall be published as a class 1 notice, under ch. 985, in the municipality at least 15 days prior to the time of the public hearing except that:

1. In towns a summary of the budget required under sub. (1) and notice of the time and place of the public hearing thereon shall be posted in 3 public places at least 15 days prior to the time of the public hearing.

2. Any school district reproducing and providing general distribution within the district of an annual report incorporating a budget summary at least 15 days

prior to the annual meeting is exempt from the notice requirements of this paragraph.

3. A common school district, as defined under s. 115.01(3), shall publish a class 1 notice, under ch. 985, as required under this paragraph, at least 10 days prior to the time of the public hearing thereon.

(b) Any budget summary required under par. (a) shall include all of the following for the proposed budget and the budget in effect, and shall also include the percentage change between the budget of the current year and the proposed budget:

1. For the general fund, all expenditures in the following categories:

a. General government.

b. Public safety.

c. Public works.

d. Health and human services.

e. Culture, recreation and education.

f. Conservation and development.

g. Capital outlay.

h. Debt service.

i. Other financing uses.

. . . .

(bm) Any budget summary created under par. (a) shall include an itemization of proposed increases and decreases to the current year budget due to new or discontinued activities and functions.

¶ 15. In essence, the Lake District argues that WIS. STAT. § 65.90 does not apply here; more specifically, it argues that only § 65.90(2) applies. This argument is without merit. WISCONSIN STAT. § 33.30(3)(b) explicitly states a budget must conform with the applicable requirements of § 65.90 and there is nothing in the plain, straightforward language of § 33.30(3)(b) or § 65.90 to intimate the limitation suggested by the Lake District. The question, then, is whether both the requirements of §§ 33.30(3)(b) and 65.90 were followed?

¶ 16. The proposed budget, as provided in the *District Dialogue* and the *Elkhorn Independent*, did not specify the water safety patrol budget amount that, at $32,400, was clearly in excess of $10,000. That alone violated the statutory notice requirements of WIS. STAT. § 33.30(3)(b). Furthermore, a proposed budget must comply with the requirements of WIS. STAT. § 65.90, which requires publication at least fifteen days prior to the meeting. Sec. 65.90(3)(a). The first newspaper publication occurred on August 23, 2000, only ten days before the meeting.

¶ 17. The Lake District's own bylaws, whose interpretation must be consistent with WIS. STAT. ch. 33, implicitly recognize this fifteen-day statutory requirement because Article 3, Section 2 requires that same fifteen-day publication prior to the meeting. In addition, the bylaws require that the second publication occur seven days before the meeting. Neither of these requirements of the bylaws was met. Thus, the Lake District violated not only its own bylaws in the notice but also the requirements of WIS. STAT. §§ 33.30 and 65.90.

¶ 18. The Lake District provides several alternative explanations for why WIS. STAT. § 65.90(3) does not

apply here, none of which have any merit. The Lake District argues that § 65.90 does not apply because it does not have the power to levy or certify a general property tax or budget. However, the Lake District is clearly levying a tax and even calls it such in its records.

¶ 19. The Lake District also argues that WIS. STAT. § 65.90 does not apply because § 65.90(3) includes budget summary requirements involving items it would not handle such as health and human services or public works. While it is true that some of those items would not apply to the Lake District, some of them would such as public safety or conservation and development. That is the very reason WIS. STAT. § 33.30(3)(b) indicates that the Lake District must conform with the *applicable* requirements of § 65.90.

¶ 20. In addition, the Lake District implicitly argues that a class 2 notice for publication was acceptable; however, the Lake District cites no authority for this proposition. Pursuant to WIS. STAT. § 33.30(2), the district board of commissioners may substitute a class 2 notice in lieu of sending written notice to electors residing within the district. This does not allow use of a second class notice instead of a first class notice but merely allows the Lake District to send a second class notice in lieu of sending written notice. Here, the Lake District actually sent written notice so use of a second class notice would have been redundant. In any event, the Lake District's own bylaws require written notice to be followed by publication twice in a paper of general circulation fifteen days and seven days prior to the meeting.

¶ 21. The Lake District further argues that WIS. STAT. § 33.30(3)(b) requires that only at the actual meeting itself does the budget have to specify any item with a cost in excess of $10,000 and thus since this

matter was raised at the meeting, it sufficiently specified the cost. This is contrary to the plain language of the statute. Section 33.30(3)(b) explicitly states: "At the annual meeting, electors and property owners shall . . . [a]pprove a budget for the coming year." The statute next requires that this budget must not only "separately identify the capital costs and the costs of operation of the district" but must also "conform with the applicable requirements under s. 65.90" which entails the necessary notice requirements. Sec. 33.30(3)(b). The Lake District cannot argue that merely mentioning the $32,400 cost at the meeting satisfies the notice requirements of §§ 33.30 and 65.90.

## CONCLUSION

¶ 22.   We reject the Lake District's argument that all statutory notice requirements were met and conclude that the Lake District's decision to form a water safety patrol and the assessment of a $32,400 tax levy to finance it were void for failure to comply with the notice requirements of WIS. STAT. §§ 33.30 and 65.90. We affirm the judgment of the circuit court.

*By the Court.*—Judgment affirmed.