PER CURIAM.
¶1 Stop the Ongoing Mine Permit (STOMP) appeals from an order of the circuit court affirming, on certiorari review, the Town of Ashford Board of Appeals' (BOA) decision to grant Batzler Trucking, Inc. a conditional use permit[1] to operate an agricultural sand mine in the Town of Ashford. STOMP argues that the BOA's decision was not supported by substantial evidence. Like the circuit court, we reject STOMP's arguments and conclude the BOA did not exceed its jurisdiction, proceeded on a correct theory of law, did not act arbitrarily, and its decision was supported by substantial evidence. Accordingly, we affirm.
¶2 In April 2016, Batzler applied for a conditional use permit to allow the operation of a nonmetallic mine (sand pit) within two parcels of land subject to a lease agreement between Batzler and the property owner.[2] The extracted agricultural sand is used by dairy farmers. The sand pit is "located within an area of predominately agricultural land use," as well as some single family residential use. STOMP is an unincorporated association established by several Town of Ashford and Auburn property owners who live near and oppose the sand pit.
¶3 Subsequent to a hearing on June 13, 2016, the BOA granted the permit, subject to multiple conditions[3] and over the objections of STOMP, and the sand pit has been operating since that time. STOMP sought certiorari review in the circuit court. The circuit court remanded the case for further deliberations as it found that the BOA "did not undertake any deliberation nor make any findings as to what the facts were and whether [it] satisfied the legal standard in the ordinance." On remand, the BOA held a hearing on August 14, 2017, discussing at length the reasons they approved the permit. The circuit court then issued its decision, denying the request for certiorari review and dismissing the action with prejudice. STOMP appeals.
DISCUSSION
¶4 On certiorari review, our scope of review is: "(1) [w]hether the Board kept within its jurisdiction; (2) whether it acted according to law; (3) whether its action was arbitrary, oppressive or unreasonable and represented its will and not its judgment; and (4) whether the evidence was such that it might reasonably make the order or determination in question." State ex rel. Ruthenberg v. Annuity & Pension Bd. , 89 Wis. 2d 463, 472, 278 N.W.2d 835 (1979). We review the decision of the BOA, not the decision of the circuit court, and our review is identical to that of the circuit court. Board of Regents v. Dane Cty. Bd. of Adjustment , 2000 WI App 211, ¶10, 238 Wis. 2d 810, 618 N.W.2d 537. Importantly, Wisconsin courts have repeatedly stated that there is a presumption of correctness and validity to a municipality's decision on certiorari review. Ottman v. Town of Primrose , 2011 WI 18, ¶48, 332 Wis. 2d 3, 796 N.W.2d 411. In this case, STOMP bears the burden to overcome the presumption that the BOA's determination is correct. See id. , ¶50. "The evidentiary test on certiorari review is the substantial evidence test, under which we determine whether reasonable minds could arrive at the same conclusion the committee reached." State ex rel. Ortega v. McCaughtry , 221 Wis. 2d 376, 386, 585 N.W.2d 640 (Ct. App. 1998). We will "sustain a municipality's findings of fact if any reasonable view of the evidence supports them."[4] Ottman , 332 Wis. 2d 3, ¶53.
¶5 Zoning ordinances generally provide landowners with permitted uses for property, but these ordinances may also provide for conditional uses, which are uses not permitted of right by zoning regulations, but may be authorized by a zoning authority. See Town of Rhine v. Bizzell , 2008 WI 76, ¶20, 311 Wis. 2d 1, 751 N.W.2d 780. "Conditional uses are for those particular uses that a community recognizes as desirable or necessary but which the community will sanction only in a controlled manner." Id. The decision to grant a conditional use permit is discretionary, and we hesitate to interfere with such local decisions. Roberts v. Manitowoc Cty. Bd. of Adjustment , 2006 WI App 169, ¶10, 295 Wis. 2d 522, 721 N.W.2d 499. WISCONSIN STAT. § 60.61(4e)(b)1.-2. (2017-18),[5] addressing conditional use permits, provides:
1. If an applicant for a conditional use permit meets or agrees to meet all of the requirements and conditions specified in the town ordinance or those imposed by the town zoning board, the town shall grant the conditional use permit. Any condition imposed must be related to the purpose of the ordinance and be based on substantial evidence.
2. The requirements and conditions described under subd. 1. must be reasonable and, to the extent practicable, measurable and may include conditions such as the permit's duration, transfer, or renewal. The applicant must demonstrate that the application and all requirements and conditions established by the town relating to the conditional use are or shall be satisfied, both of which must be supported by substantial evidence. The town's decision to approve or deny the permit must be supported by substantial evidence.
Section 60.61(4e)(a)2. provides that "[s]ubstantial evidence" means "facts and information, other than merely personal preferences or speculation, directly pertaining to the requirements and conditions an applicant must meet to obtain a conditional use permit and that reasonable persons would accept in support of a conclusion."
¶6 In this case, the relevant "conditions specified in the town ordinance or those imposed by the town zoning board" can be found in TOWN OF ASHFORD , WIS. , ZONING ORDINANCE § 9(6)(c)1.-6. (Aug. 24, 2015),[6] which sets forth six criteria for issuing a permit and requires that the BOA "make findings of fact consistent with" these provisions. The parties both agree that STOMP only challenges the sufficiency of the evidence to support the first and second criteria:[7]
1. That the establishment, maintenance or operation of the special exception use or structure will not be detrimental or injurious to the use and enjoyment of adjacent properties or properties in the immediate vicinity;
2. That the special exception is compatible with the adjacent existing uses and structures or uses and structures likely to develop which are permitted in the district.
¶7 In applying the applicable law to the facts of this case under certiorari review, we conclude that the evidence in the record overwhelmingly indicates that the BOA kept within its jurisdiction; acted according to the law; did not act arbitrarily, oppressively, or unreasonably; and properly considered and addressed on the record all the requirements and conditions specified in the town code provisions such that the BOA's decision was reasonable under the circumstances.
¶8 Members of STOMP argued at the June 13, 2016 hearing that they believed their properties would be harmed by the sand pit as it would be detrimental to the use and enjoyment of their homes, citing dust and blowing sand, noise, increased traffic, and decreased property values. The evidence in support of STOMP's concerns, however, was little more than personal preferences or speculation in opposition to the sand pit. The homeowners argued that this area had become residential and a sand pit was not compatible with that use. On appeal, STOMP argues "that the criteria in the zoning ordinance were not actually evaluated and considered by the Village Board at the relevant hearings" and, further, that "the Board did not have a sufficient factual basis to make findings that the applicant met the applicable requirements in the Town's ordinances." We disagree.
¶9 The BOA properly reviewed Batzler's extensive reclamation plan, which included conditions to address concerns of surrounding homeowners; held public hearings; set its own limiting conditions to address continuing homeowner concerns; and made the required findings to grant the permit. At the hearing on August 14, 2017, the BOA addressed each criterion under § 6(c), detailing the evidence the board members considered in reaching its decision. The BOA noted that the term "compatible" is not the same as "identical," and the community is a farming, agricultural community that benefits from removal of the sand, reclamation of the land, and use of the sand once it is removed. Some of the evidence found in the record to support the BOA's determination included:
• the site of the sand pit is zoned farmland preservation district (agricultural), not residential neighborhood district;
• the approved phases 1 and 3 have a natural barrier between the homes in the vicinity that is composed of a marsh and a line of woods, and there is sufficient space between the homes and the pit, which was supported by aerial photos and maps;
• when the BOA members visited the site they could not hear the operation from the area around the homes;
• there have been no police reports of accidents involving the Batzler trucks and there was no evidence presented suggesting that truck traffic has been or would be a problem;
• there will be no crushing activity (which would increase dust in the air) only removal of sand from hills on the property (horizontal mining);
• fly ash will be used to prevent blowing sand;
• there will be limited numbers of trucks, hours, and days that Batzler will be able to operate and the trucks will be required to follow a specific path to limit backup alarms and exit the pit away from the residences pursuant to the conditions in the permit;
• there are other pits and mines in the area, noting that "[i]t's always been a sand and gravel community," and a sand mine is more compatible to the existing area than a gravel mine;
• the sand at the pit is the type used specifically for bedding for dairy cows and is important for farmers and is not found everywhere;
• the pit will eventually be reclaimed and the land returned to agricultural use, in fact three acres have already been reclaimed and corn has been planted;
• and other areas in the town that were sand mines have already been returned to agricultural use.
¶10 STOMP further argues that beyond the general special exception permit requirements found in § 6(c), the Town code regulates extraction and mining activities in two other sections.[8] We agree with the circuit court that the BOA's discussion of the six criteria found in § 6(c) at the August 14, 2017 hearing sufficiently addressed these two remaining code provisions.
¶11 STOMP claims that the evidence in support of granting the permit is based on "pure opinion," and STOMP contends that BOA members are prohibited from relying on personal knowledge or common experience in reaching its decision. As detailed above, there is more than sufficient evidence in the record, apart from the BOA members' personal opinions, to support granting the permit. Further, we disagree with STOMP that personal knowledge or opinion is an inappropriate consideration. See Town of Hudson v. Hudson Town Bd. of Adjustment , 158 Wis. 2d 263, 276-77, 461 N.W.2d 827 (Ct. App. 1990) (upholding denial of a special exception permit for an expanded service station based on inference of increased traffic without expert testimony); see also Petersen v. Dane Cty. , 136 Wis. 2d 501, 511, 402 N.W.2d 376 (Ct. App. 1987) ("Since the town board members acted in a legislative capacity, they were entitled to apply to the decisionmaking process their personal knowledge and experience.").
¶12 STOMP points to the amendments to WIS. STAT. § 60.61(4e)(a)2., which define substantial evidence as "facts and information, other than merely personal preferences or speculation." The term "merely" is defined in the dictionary as "only as specified and nothing more" or "simply." Merely , THE RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE (2d ed. 1987). Based on the legislature's use of that term in conjunction with the phrase "other than," we believe it did not intend to prohibit the use of personal preference, speculation, or personal knowledge completely; it meant to curb the use of that information as the only support for the conditional use permit. Because there was testimony in support of the board's decision based on more than just personal knowledge, we find no error.
¶13 In summary, the BOA properly considered and weighed the claims of Batzler against the concerns of STOMP as well as others in opposition. The BOA kept within its jurisdiction and acted according to the law. Any argument that the BOA acted arbitrarily or capriciously is without merit as the BOA tailored its discussion to the relevant criteria and reached a conclusion supported by the substantial evidence.[9]
By the Court. -Order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

The parties refer to the permit as a special exception permit, a special exception use permit, and a conditional use permit. We will refer to it as a conditional use permit or as "the permit."

Batzler also applied for and received three permits through the Department of Natural Resources (DNR) to operate the sand pit. Two of the permits deal with nonmetallic mining and one addresses fugitive dust controls to help reduce or eliminate dust from the operations.

The conditions included limiting the plan to the areas (phase 1 and phase 3) away from the residential subdivisions separated by wetlands and forest; operating only between the hours of 7 a.m. and 5 p.m. on Monday through Friday; not allowing crushing or blasting within the site; requiring that the site be restored to farmland when complete; allowing no more than eight trucks on average per day; requiring that the trucks exit the sand pit to the west, away from residences; setting restrictions regarding the path of the trucks so backup alarms would not be heard; and other special conditions.

STOMP faults the circuit court for "not only search[ing] the record, but extend[ing] that effort to making factual findings in favor of the BOA and the grant of the [conditional use permit]." The board's decision to grant a conditional use permit is discretionary in nature. See Village of DeForest v. County of Dane , 211 Wis. 2d 804, 816, 565 N.W.2d 296 (Ct. App. 1997). We will "look for reasons" to uphold a discretionary determination. See Loomans v. Milwaukee Mut. Ins. Co. , 38 Wis. 2d 656, 662, 158 N.W.2d 318 (1968). The board's findings of fact will be upheld if substantial evidence supports its decision, even if substantial evidence also supports the opposite conclusion. See CBS, Inc. v. LIRC , 219 Wis. 2d 564, 568 n.4, 579 N.W.2d 668 (1998).

All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted. The statute was amended by 2017 Wis. Act 67, which went into effect on November 29, 2017.

The parties and the circuit court refer to the relevant provision of the ordinance as Chapter 9, § 6(c), but the code references "Section 9-Board of Appeals" and does not appear to break the provisions down by chapters. In the interest of uniformity, we will refer to the criteria as § 6(c) throughout this decision.

The remaining criteria refer to whether adequate public facilities are available, adequate measures are taken for drainage, ingress and egress is provided in a manner that minimizes traffic hazards, and adequate parking and loading areas are provided. Town of Ashford , Wis. , Zoning Ordinance § 6(c)3.-6. To the extent that STOMP argues that these criteria have not been satisfied, we disagree. There is sufficient evidence in the record, as discussed by the board members at the August 14, 2017 hearing, to render the BOA's determination reasonable.

Town of Ashford , Wis. , Zoning Ordinance § 6(5)(a), titled "Supplementary District Regulations" addressing "Resource Extraction," provides that the
[l]ocation shall be appropriate to existing development and development which may reasonably be expected within the time period specified herein. The site shall be so located as to make it unnecessary to conduct trucking operations on town roads through established residential areas and unnecessary for special improvements or maintenance of public facilities at public expense.
Also, Town of Ashford , Wis. , Zoning Ordinance § 5(5.3), titled "Farmland Preservation District," provides in pertinent part under "Special Exceptions Uses and Structures":
5. Nonmetallic mineral extraction if all of the following apply:
....
b. The operation and its location in the district are reasonable and appropriate, considering alternative locations outside the district ....

STOMP makes a final argument concerning the costs the circuit court ordered for preparing the hearing transcripts. The bill of costs shows that the Town sought an award of costs under Wis. Stat. § 814.04(2), which allows for "amounts actually paid out for certified and other copies of papers and records in any public office." STOMP argues that under Wis. Stat. § 68.11(3), the expense is to be paid by the municipality. However, Wis. Stat. § 68.13(2), addressing judicial review of municipal administrative procedure, provides in relevant part that "[i]f review is sought of a final determination, the record of the proceedings shall be transcribed at the expense of the person seeking review. A transcript shall be supplied to anyone requesting the same at the requester's expense." As this is a judicial review of the BOA's final decision, we conclude that it falls under § 68.13(2), which specifically calls for the hearing to be transcribed at the expense of the party seeking review. We see no error with the circuit court awarding costs in this case.