PETITION OF LEUCH: LEUCH, Appellant, vs. MILWAUKEE COUNTY BOARD OF ELECTION COMMISSIONERS and another, Respondents.

*November 11—December 7, 1943.*

306

For the appellant there were briefs by *Adolph G. Schwefel,* attorney, and *J. Elmer Lehr* and *Cyrus C. Thieme* of counsel, all of Milwaukee, and oral argument by *Mr. Schwefel* and *Mr. Lehr.*

For the respondent Milwaukee County Board of Election Commissioners there was a brief by *James J. Kerwin,* district attorney of Milwaukee county, and *O. L. O'Boyle,* corporation counsel, and oral argument by *Mr. O'Boyle.*

For the respondent Herbert J. Steffes there was a brief by *Louis Quarles, Maxwell H. Herriott,* and *Charles S. Quarles,* all of Milwaukee, and oral argument by *Mr. Herriott.*

MARTIN, J.    In the primary held in the city and county of Milwaukee on March 16, 1943, MAX W. NOHL, then municipal judge, and petitioner, Peter F. Leuch, were candidates for nomination for the office of municipal judge in and for Milwaukee city and county.    There was a third candidate, Lawrence Willenson.    In said primary Judge NOHL received 25,321 votes; petitioner, Leuch, received 3,331 votes; Lawrence Willenson received 3,007 votes; and there were 23 scattered votes.    On March 26, 1943, Judge NOHL died, just eleven days before the general election to be held on April 6th.    At the time of Judge NOHL's death the ballots for use in the April 6th election had not been printed.

After March 26th and prior to April 3d the Milwaukee county election commission caused ballots to be printed for use at the election on April 6th, containing the name of petitioner, Leuch, as a nominee for the office of judge of the

municipal court. On the ballot and below the name of petitioner there were left two blank spaces; one space representing the vacancy caused by Judge NOHL's death, or at least representing the space in which his name would have appeared had he lived; the other blank space being left for write-in names.

Judge NOHL had not appointed any personal campaign committee under the provisions of sec. 5.28, Stats. On March 30th the county board of election commissioners published the official ballot. In this publication the name of petitioner appeared as the only nominee for the office of municipal judge. Upon the death of Judge NOHL, the Milwaukee county election commission immediately stopped further printing of ballots. There was then a reprinting of ballots bearing only the name of petitioner, Leuch. On March 26th the Milwaukee county election commission notified the members of the Milwaukee county board of supervisors of Judge NOHL's death and advised them that Judge NOHL at the time of his death had no personal campaign committee, and that under sec. 5.28 it became the duty of the Milwaukee county board of supervisors to nominate a candidate to take the place of Judge NOHL upon the ballot for the April 6th election.

It appears that some effort was made to procure the unanimous consent of all members of the county board of supervisors for a special meeting to be held on March 27th for the purpose of making a nomination to fill the vacancy caused by Judge NOHL's death. Unanimous consent could not be obtained. A special meeting of the county board of supervisors was then called pursuant to sec. 59.04 (2), Stats., which required one week's notice.

The county board of supervisors met in special session on Saturday, April 3d, at which time the board nominated the respondent Herbert J. Steffes to fill the vacancy caused by the death of Judge NOHL. The nomination of Steffes was im-

mediately certified to the Milwaukee county board of election commissioners. On April 5th the board of election commissioners published the official ballot, that is, the judicial ballot, on which appeared the names of Leuch and Steffes as nominees for the office of municipal judge. Between April 3d and 6th the board of election commissioners delivered stickers upon which were printed the name of Steffes to the ballot clerks at the several precincts and directed them before presenting said ballots to the voters to paste one of said stickers on each official ballot in the blank space on the ballot where the name of Judge NOHL would have appeared in print had he lived. It appears that the ballots were so prepared, were initialed by the ballot clerks and used in the election on April 6th. In the election Steffes received 53,847 votes; Mr. Leuch received 20,671 votes; Willenson received 704 votes as a write-in candidate; and there were 74 scattered votes.

On April 12th Mr. Leuch instituted these proceedings under sec. 6.66 (1), Stats.; filed his petition with the Milwaukee county board of election commissioners, alleging illegality of the act of the county board of supervisors in nominating Steffes to fill the vacancy caused by Judge NOHL's death; further alleging illegality of the acts of the Milwaukee county board of election commissioners in causing to be printed and placed upon the ballots for use in the April 6th election stickers bearing the name of Steffes; and praying that it be determined by the Milwaukee county board of election commissioners that he, petitioner, had received a plurality of all votes cast at the election on April 6th for the office of judge of the municipal court, and that a certificate of election be issued by said county board of election commissioners to him.

Sec. 5.28, Stats., so far as here material, provides:

"In case the candidate is a nonpartisan nominee, the vacancy shall be filled by the personal campaign committee of the candidate, who shall make and file a certificate in the manner above prescribed. If the candidate had no personal campaign

committee, such vacancy *shall* be filled by the supervisors of the town, trustees of the village, council of the city, or board of supervisors of the county, as the case may be, and such board shall make and file a certificate as herein provided. If such declination, death or the permanent removal of a nominee take place *after* the ballots are printed and before election, the proper chairman of the committee above authorized to fill vacancies may make a nomination to fill the vacancy, and provide the election boards with pasters containing the name of such nominee only, which shall be pasted upon each of the official ballots by the ballot clerks, before signing their initials thereon and delivering them to voters. If the nominee die after the ballots are printed, *and no nomination shall be made* as herein provided, the votes cast for him shall be counted and returned, and if he shall receive a plurality the vacancy shall be filled as in case of vacancies occurring by death after election."

It should be noted that under sec. 5.26 (8) (b), Stats., it is mandatory that "the two candidates for any judicial office, . . . receiving the highest number of votes cast at such primary shall be the nominees for such office, and their names, and none ·other, shall be placed on the official ballot at the ensuing judicial . . . election." Par. (c) of said section provides that:

"Except as otherwise provided in this section the general law relating to nomination of candidates at September primaries shall apply to nomination of judicial candidates. . . ."

Petitioner contends that because of the wording of par. (b), the two candidates receiving the highest number of votes cast at such election for said office and their names and none other shall be placed upon the official ballot, the names of any other candidates are precluded from being placed upon the ballot. This contention cannot be sustained. The words "and none other" must mean the two who receive the highest number of votes in the primary; the word "placing" means printing thereon, because there is a provision in the statute for the

insertion of other names by writing them in or by placing stickers thereon. We therefore hold that the words "and none other" mean that the printing upon the ballot should be confined to the two who received the highest number of votes (both being living). Any other construction would nullify the other provisions of the statute which permit the writing in of names and the use of stickers.

Sec. 5.28, Stats., provides for nominations for filling vacancies after nominations have been made. In view of the mandatory provisions requiring that the two candidates receiving the highest number of votes must have their names placed on the ballot, it seems clear that the legislature had in mind to give the voters an opportunity to make a choice between the two nominees for the office without barring others from being voted upon, that is, by writing in names or using stickers.

Sec. 5.28, Stats., further provides:

"Any person nominated to office may decline and annul the same [the nomination] by delivering to the officer with whom his certificate of nomination or nomination paper is filed, not less than twelve days before election in case of town, village or city officers, and twenty-five days in other cases, a declination in writing signed by him and acknowledged before some officer authorized to take acknowledgments. . . ."

It then provides:

"Upon such declination or the death of a nominee the vacancy or any vacancy caused by the insufficiency of certificates of nomination or nomination papers, may be filled in case the candidate is the nominee of a political party, by the committee representing the party, the chairman and secretary of which in such case shall make and deliver to the proper officer for filing a certificate, duly signed, certified and sworn to, as required in case of original certificates, setting forth the cause of the vacancy, name of new nominee, office for which nominated, and such other information as is required in the case of original certificates. . . ."

This certificate must be filed ten days before election in case of town, village, or city officers, and twenty-three days in other cases.

Judge NOHL having no personal campaign committee, it was mandatory that the county board of supervisors fill the vacancy caused by his death; and there was no limitation of time for making said nomination and filing the certificate thereof with the board of election commissioners. The twenty-three-day limitation and the ten-day limitation quoted above cannot be applied to making a nomination to fill the vacancy in question. The vacancy did not occur until the eleventh day before the April 6th election. A special meeting of the county board of supervisors required seven days' notice. The county board of supervisors made its nomination on the earliest possible date. We hold that it was not only within the power of the county board of supervisors to make a nomination, but it was its duty to do so.

Appellant contends that the vacancy referred to in sec. 5.28, Stats., in case of nonpartisan judicial candidates, refers to a case where there is only one candidate nominated for the office and who dies before election, thereby creating a vacancy in the office, which may be filled by nomination so that no special election is required to later fill the office. He argues that where there is a regularly nominated candidate on the ballot there can in fact be no vacancy, because the voter has the right to vote by writing in or by a sticker to be used and applied by him. There is no merit in this contention, since under sec. 5.26 (8) (b) it is mandatory that the two candidates for any judicial office receiving the highest number of votes cast at the primary shall be the nominees for such office and their names and none other shall be placed on the official ballot at the ensuing judicial election; except in case of vacancy wherein it may be filled as provided in sec. 5.28.

Appellant argues that the statute refers to a vacancy in the office. The vacancy mentioned in the statute refers only to a

vacancy caused by declination, removal, or the death of one or both of the two candidates who had received the highest number of votes in the primary election.

Appellant contends that all of the sticker votes cast for Steffes were illegal and must therefore be disregarded. If this contention were sustained he would have received a plurality of all the votes cast. This contention brings us to a consideration of the pasting of stickers on the ballots with Steffes' name printed thereon. The use of stickers in voting in certain instances is specifically authorized by statute and the practice sustained by many decisions of this court. There is nothing inherently wrong in placing a candidate's name on a sticker and in placing the sticker on the ballot, as a means of expressing the choice of the voter; particularly where the voter is required to make a mark in the square to the right of the candidate's name. A sticker is not illegal *per se*. Had the ballots for the April 6th election been fully printed at the date of Judge Nohl's death instead of partially printed, and had he named a personal campaign committee, such committee could have filled the vacancy caused by his death; in which event sec. 5.28, Stats., would authorize the use of pasters on the ballots. In that case such a ballot would be exactly the same as those used in the April 6th election.

What happened in the instant case is obvious. On March 27th the board of election commissioners realized that they could not have printed and distributed the ballots after April 3d for the election on April 6th. They were required by law to make available ballots for absentees not later than April 3d (sec. 11.57, Stats.). On that date they ordered new ballots printed, omitting the name of Judge Nohl but retaining the space blank with the square for registering the vote at the right thereof. A number of such ballots on which was printed only the name of appellant were used by absentee voters. Then when the name of Mr. Steffes was certified to them by the chairman of the county board of supervisors on

April 3d, they ordered that Mr. Steffes' name be printed on gummed paper and directed the ballot clerks to place said pasters upon the ballots in the blank space in which, but for his death, would have appeared the name of MAX W. NOHL. The electors were still required to indicate their vote by placing a mark in the square to the right of the name of Peter F. Leuch or of Herbert J. Steffes, or by writing the name of some other person in the space provided for such purpose.

While there is no express statutory authorization for the board of election commissioners to print stickers and cause same to be pasted on the official ballots by the ballot clerks, they are by statute required to prepare the official ballot for use by the electors in such form as will afford the elector opportunity to express his choice in casting his ballot. Sec. 5.01 (6), Stats., referring to the title on elections and nomination of candidates for office, provides:

"This title shall be construed so as to give effect to the will of the electors, if that can be ascertained from the proceedings, *notwithstanding informality or failure to comply with some of its provisions.*"

Sec. 6.42, Stats., so far as here material, provides:

"All ballots cast at any election shall be counted for the persons for whom they were intended, so far as such intent can be ascertained therefrom."

Sec. 6.75, Stats., provides:

"In every election for the choice of any officer, unless otherwise provided by law, each elector shall have one vote and no more; and the person appearing satisfactorily to have received the highest number of legal votes for any office shall be deemed to have been duly elected to that office, and the canvassers shall so determine and certify. The legality of such votes so appearing, *failures to fully comply with the law respecting noticing or conducting the election or canvassing or returning the vote, shall be disregarded.*"

Stickers as used in the instant case are not prohibited by sec. 6.23 (11), Stats., which provides:

"No pasting names *over a ticket* or over any names thereon shall be allowed and no name so pasted shall be counted except as provided in section 5.28."

It will be noted that this section is not applicable where the use of stickers is permitted under sec. 5.28, Stats. The word "ticket" there used means a party ticket on the ballot, which could be voted by placing a cross in the circle at the top of the party ticket. None of the stickers in the instant case were placed over the name of any person on the ballot. They were all placed in the blank space where Judge Noﬁl's name would have been printed had he lived.

In *Ollmann v. Kowalewski,* 238 Wis. 574, 580, 300 N. W. 183, the court said:

"To make the ballot illegal it must have been cast by someone not a legal voter or illegally cast by some legal voter casting two ballots. It must have been cast by some person not on the registration list, or not entitled to vote for some other reason."

The facts as hereinabove stated are in substance the findings made by the trial court. In addition, the court found:

"That no fraud was perpetrated upon the electors of Milwaukee county or any of them and none of them were misled by reason of anything that occurred in connection with the nomination, printing the ballots, the pasting thereon of the stickers, or the conduct of the election and that all ballots cast for Herbert J. Steffes were marked by the electors."

In *State ex rel. Hampel v. Mitten,* 227 Wis. 598, 605, 278 N. W. 431, the court said:

"It is our conclusion that the purpose of sec. 5.01 (6) was to require the court, in spite of the literal meaning of the Corrupt Practices Act, so to construe it as to deny ouster in

all cases where the violations were either technical, insubstantial, or trivial, or where from the very nature of the violation the minds of the electors could neither have been corrupted nor misled, as where the violation consisted of a mere omission to perform some prescribed act which was ancillary or auxiliary to the main purpose of the law, but which, of itself, could have no tendency to influence or affect the minds of the electors."

*In re Burke,* 229 Wis. 545, 282 N. W. 598, presented an unusual situation. There was a contest for the office of town chairman in the town of Dayton, Richland county, in the election of April 5, 1938. The contest brought out an unusually heavy vote, which resulted in exhausting all the official ballots printed for that election. When the official ballots were exhausted the ballot clerks used sample ballots; also some of the 1937 ballots, after scratching out the names of the 1937 nominees and writing in the names of the 1938 nominees. The sample ballots and the 1937 ballots were counted in determining the result of the election. This court held that the will of the voters was ascertainable and the failure to comply with the statutes with respect to the ballots was immaterial.

In *State ex rel. Oaks v. Brown,* 211 Wis. 571, 579, 249 N. W. 50, the court said:

"It should also be pointed out that sec. 5.01 (6) affords no excuse for the nonperformance of prescribed official duty. If it had been sought to enjoin holding of the election on April 5, 1932, on the ground that the ordinance had not been published or notice given as required by law, an entirely different question would be presented. It is manifest that sec. 5.01 (6) applies only after the holding of the election and the will of the electors has been manifested. When the matter has been allowed to proceed to that point the will of the electors is to be given effect *even though there may have been informalities or in some respect a failure to comply with the statute.*"

The 53,847 electors who marked their ballots as required by sec. 6.42, Stats., for Herbert J. Steffes for the office of municipal judge, should not be disfranchised because of the physical impossibility of the Milwaukee county board of election commissioners to have the judicial ballots reprinted for all the election precincts in Milwaukee county between receipt of Mr. Steffes' nomination by the Milwaukee county board of supervisors and the opening of the polls on the morning of April 6th. Under the circumstances sec. 5.01 (6) is applicable, and we must give effect to the will of the electors, notwithstanding informality or failure to comply with some statutory provisions.

*By the Court.*—Judgment affirmed. No costs to be taxed.