SCHMIDT, Appellant, v. CITY OF WEST BEND BOARD OF CANVASSERS and another, Respondents.

*November 2—November 27, 1962.*

For the appellant there were briefs by *Marth & Marth* of West Bend, and oral argument by *Robert Marth*.

For the respondents there was a brief by *Schloemer & Merriam* of West Bend, and oral argument by *Henry O. Schloemer*.

GORDON, J.

### 1. *The Canceled Voting Mark.*

One of the ballots which was cast at the regular polling booths contained a cross mark in the square opposite the name of Walter Schmidt. Over this cross mark was a heavy penciling which obliterated the entire square. The "X" mark is barely visible in the square by reason of the heavy shading which fills the square. In the ballot squares for three other offices appearing on the same ballot, this voter marked his ballot with an unadorned "X."

It was entirely reasonable for the trial judge to determine that the voter attempted to obliterate and cancel out his vote for mayor; the trial court properly concluded that this ballot should not be counted as a vote for Walter Schmidt. In our opinion, the trial judge's conclusion in this regard must be treated as a finding of fact, and since it is not against the great weight and clear preponderance of the evidence, such finding must be sustained.

### 2. *The Bradley Ballot.*

Esther Bradley had no valid grounds for casting an absentee ballot. As an employee in the office of the city clerk, she did it for her own convenience. Sec. 11.54, Stats., sets forth the reasons for absentee voting. One ground is absence; another is sickness or physical disability; a final ground is a religious reason.

Notwithstanding the fact that she did not have a proper basis for using an absentee ballot, Esther Bradley executed the affidavit stating that she had such grounds.

We recognize that one who gives a false oath and thereby qualifies to receive an absentee ballot would successfully circumvent the provisions of sec. 11.54, Stats., if the absentee ballot were counted. On the other hand, to permit such rejection of absentee ballots on this grounds would encourage postelection inquiries into the elusive subject of a voter's state of mind. Since the statute authorizes the issuance of a ballot to a person with a specific intention (*i.e.,* to be absent on election day), we consider that to encourage such investigations would cause as much or more mischief than it would cure. We consider that it would be poor public policy to give a citizen who has sworn that he qualifies for a ballot the option to cause his ballot to be rejected and thereby influence the result of an election by subsequently swearing that he did not meet the statutory requirements. Accordingly, we conclude that Esther Bradley's ballot was properly cast, as the trial court held.

### 3. *The Hemauer Ballots.*

The "Hemauer ballots" were so called because they were notarized by Alfred Hemauer, the city clerk. They are challenged because Mr. Hemauer was not personally present at the time the vote was cast. These absentee voters came to the city hall and received an absentee ballot from one of the employees in the city clerk's office. In some instances, Mr. Hemauer was in his separate office; in some cases he was not even in the building. In none of the cases did these voters exhibit their unmarked ballots to Mr. Hemauer. They did not mark their ballots in his personal presence. They did not fold their ballots in his personal presence. The voters did not deposit their ballots in the ballot envelopes in Mr. Hemauer's personal presence. Finally, they did not swear to or sign the affidavit on the absentee envelope in his personal presence.

The provisions of secs. 11.58 and 11.59, Stats., are deemed to be directory and not mandatory. *Petition of Anderson* (1961), 12 Wis. (2d) 530, 534, 107 N. W. (2d) 496. See *Sommerfeld v. Board of Canvassers* (1955), 269 Wis. 299, 69 N. W. (2d) 235. Nevertheless, there must be substantial compliance with the statute, as the court held in *Kaufmann v. La Crosse City Board of Canvassers* (1959), 8 Wis. (2d) 182, 184, 98 N. W. (2d) 422. In that case, the absentee ballots were issued to voters who executed their ballots away from the city hall. These ballots were then returned to the city hall without any indication of an oath having been administered. This total failure to comply with the oath requirements of the statute was deemed fatal. We consider that the instant case is distinguishable from the *Kaufmann Case* by reason of the degree of variance from the statute. In the case at bar the absentee voters came to the city clerk's office and relied upon the procedures employed by the city clerk's staff. When the voters in the case at bar subscribed to their affidavits, they could reasonably assume that they were doing so in the presence of an officer authorized by law to take their acknowledgments. There is an aura of regularity which attends the execution of an absentee ballot in the city clerk's office which would readily lead the voter to assume that his vote is being properly cast. This does not apply to an absentee ballot which is executed in private quarters where it is more reasonable to impose upon the voter the burden of ascertaining that his affidavit is taken before one authorized to administer oaths.

While we do not believe that it can be said that Mr. Hemauer was "present" at the time these ballots were cast, we do not believe that the legislature intended that voters be disenfranchised because of the technicalities which were violated in the instant case. In the *Sommerfeld Case,* at page 302, we quoted the case of *McMaster v. Wilkinson*

(1944), 145 Neb. 39, 47, 15 N. W. (2d) 348, 155 A. L. R. 667, as follows:

"It is the policy of the law to prevent as far as possible the disfranchisement of electors who have cast their ballots in good faith, and while the technical requirements set forth in the absentee-voting law are mandatory, yet in meeting these requirements laws are construed so that a substantial compliance therewith is all that is required."

There is no claim in the instant case of connivance or fraud; indeed, it is clear that the practice employed in connection with these ballots was that used for many years at the city hall in West Bend. While we disapprove of this practice, and admonish against its continuance, we are unwilling to conclude that there has been a want of substantial compliance. In our view, the so-called "Hemauer ballots" were properly counted, as the trial court held.

In view of the foregoing conclusions, it follows that the trial court correctly determined that Mr. Henke was elected by a plurality of two votes.

*By the Court.*—Judgment affirmed.