147 Wis.2d 467 (1988)
433 N.W.2d 266
IN RE: APPEAL OF the BOARD OF CANVASSERS OF the CITY OF BAYFIELD, WISCONSIN: William HACKBARTH, Plaintiff-Respondent,
v.
Edwin ERICKSON, Defendant-Appellant. []
No. 88-0851.
Court of Appeals of Wisconsin.
Submitted on briefs August 15, 1988.
Decided November 8, 1988.
*468 For defendant-appellant there were briefs by Michael D. Wartman and Wartman, Wartman & Dallenbach, S.C., Ashland; and Kim Grimmer and Ross & Stevens, S.C., Madison.
*469 For plaintiff-respondent there was a brief by Michael F. Fauerbach and Jacobs, McDonald, Silc, McDonald & Fauerbach, P.C., Ashland.
For intervenor State Elections Board there was a brief by Donald J. Hanaway, attorney general, and Alan Lee, assistant attorney general, Madison.
Before Cane, P.J., LaRocque and Myse, JJ.
LaROCQUE, J.
Edwin Erickson appeals a decision of the circuit court declaring William Hackbarth the winner of the city of Bayfield's mayoral election. Erickson challenges those ballots cast for Hackbarth that also included Hackbarth's name as a write-in for a vacant aldermanic post. The trial court took voters' testimony to determine their intent and declared Hackbarth the winner. We conclude that the electors' intent can be adequately ascertained without resort to extrinsic evidence and affirm the judgment in favor of Hackbarth.
Erickson, the incumbent mayor, was challenged by Hackbarth, at the time an alderman from the city's third ward. The election, held in the spring of 1988, presented no candidate for Hackbarth's aldermanic position, and thus no names were included on the ballot for that office. Hackbarth won the original ballot count for mayor by eight votes. The vote total, however, included eight ballots from the city's third ward that were marked with a traditional "X" in the box opposite Hackbarth's name for mayor, but also included Hackbarth's name hand printed as a write-in for third ward alderman. At a recount proceeding requested by Erickson, the board of canvassers set aside all eight votes as invalid, causing a tie vote of 153 for each candidate.
*470 Hackbarth was not represented by counsel at the recount proceeding. He did, however, obtain counsel after the recount and requested reconsideration of the board's decision, offering to call certain voters to testify to their intent in casting the challenged ballots. Hackbarth's requests were denied. He then agreed to a coin flip with the proviso that he was not waiving his appeal rights. A coin toss resulted in an Erickson victory.[1]
Hackbarth appealed the recount decision of the board of canvassers to the circuit court pursuant to sec. 9.01(6), Stats., and a hearing was held to review the board's determination. Hackbarth's counsel was permitted to call three witnesses, over objection, each of whom willingly identified one of the contested ballots and stated his or her intent to vote for Hackbarth for mayor. Each also indicated an intent to vote for Hackbarth for alderman in the event he failed in his bid for mayor.
The court accepted the extrinsic evidence from the three witnesses as convincing proof of intent and declared Hackbarth the winner by three votes. The remaining five contested ballots were declared invalid on grounds they were impossibly ambiguous.
[1]
The circuit court's scope of review of the board of canvassers' determination is found in sec. 9.01(8). The court is permitted to receive evidence not offered to the board of canvassers because a party was not represented by counsel at a recount proceeding. The circuit court was therefore entitled to accept evidence in this case. Because we conclude that all eight ballots *471 are valid on their faces without resort to extrinsic evidence, we need not resolve the apparent conflict of authority in Wisconsin on the issue whether an elector can testify in how he or she voted.
[2]
We turn first to the principles and method to be used to determine whether the invalidate a ballot. Any challenge to a ballot should begin with the admonition of Justice Marvin Rosenberry in State ex rel. Barber v. Circuit Court, 178 Wis. 468, 473, 190 N.W. 563, 565 (1922): "Nothing can be clearer under our constitution and laws than that the right of a citizen to vote is a fundamental, inherent right. It is a right which has been most jealously guarded and may not under our constitution and laws be destroyed or even unreasonably restricted." (Citation omitted.) Wisconsin has a long tradition of protecting the individual citizen's right to have his vote counted, consistent with necessary restrictions to insure the integrity of the election process. Our supreme court, decades before current legislative requirements, noted: "The constitutional right of an elector to have any reasonable expression of his intention in voting given effect is of the most sacred character, and no intent to thwart it can be ascribed to the Legislature, except upon unambiguous expression." State ex rel. Crain v. Acker, 142 Wis. 394, 395, 125 N.W. 952, 953 (1910). Section 5.01 now requires construction of our election laws "to give effect to the will of the electors, if that can be ascertained from the proceedings, notwithstanding informality or failure to fully comply with some of their provisions." "If an elector marks his ballot with a cross . . . or any other marks . . . within the square to the right of a candidate's name, or any place within the space in which the name appears, indicating an *472 intent to vote for that candidate, it is a vote for the candidate whose name it is opposite." Sec. 7.50(2)(c), Stats. Rules of construction used as an aid in determining the intent of parties to a contract may be useful in interpreting a ballot. Attorney General ex rel. Carpenter v. Ely, 4 Wis. 438, *420, 449, *429 (1854).
[3]
We need not remand the matter for further fact finding since in cases where the evidence is documentary, the appellate court may be as able to draw inferences as the trial judge. De Lap v. Institute of America, 31 Wis. 2d 507, 510, 143 N.W.2d 476, 477 (1966).
[4]
In view of the foregoing principles and rules, given two reasonable alternative choices of establishing an elector's intent, the one that saves the ballot is preferable to one that does not. See Home Bldg. & Loan Ass'n v. Northwestern Nat'l Ins. Co., 236 Wis. 475, 482, 295 N.W. 707, 710 (1941).
Erickson relies upon the reasoning used in California in a similar case. In Keane v. Smith, 485 P.2d 261 (Cal. 1971), Smith, the district attorney, sought election to the office of superior court judge. Several voters marked an "X" for Smith in the judicial election while also writing in Smith's name for the office of district attorney where no candidate appeared on the ballot. The California decision rejected the ballots on grounds that they were, under one view, a void attempt to elect the candidate to incompatible offices and were impossibly ambiguous as well.
The California court, in rejecting the ballots, ascribed four possible alternative intentions to the electors who cast the challenged ballots: (1) an intent to vote for the candidate for both positions even *473 though they are incompatible public offices, an intention the court ruled would invalidate the ballot; or (2) a change a mind after realizing there was a vacancy in the write-in position; or (3) an intent to vote but once with the other mark entered by mistake, or (4) an intent (similar to that of the three witnesses in the Hackbarth-Erickson dispute) to provide a "fall back" position if the candidate lost the office he sought.
We reject this approach for two reasons: First, it fails to consider the foregoing well-established rules and principles of construction and, second, Wisconsin determines a candidate's eligibility for office at the time he takes office and not at the time of his candidacy.
Applying a construction that saves a ballot from invalidity, we reject the attempt to attribute the ballot markings to mistake or change of mind. In Wisconsin, "Any elector who, by accident or mistake, spoils or erroneously prepares his ballot may receive another, by returning the defective ballot . . . . Sec. 6.80(2)(c), Stats. We therefore conclude that it is unreasonable to assume that a voter with a right to receive a new ballot would not have done so.
As to the remaining two possibilities, an intent to vote for one candidate for incompatible offices or to allow the candidate an alternative office in the event he loses the election to the other, present Wisconsin law prohibits neither. Since the candidate can ultimately hold only one position, it makes no difference which of the alternatives the elector intended.
[5-8]
Wisconsin requires a person be eligible for an office as of the time he takes office and not at the time of his candidacy. State ex rel. Zimmerman v. Dammann, 201 Wis. 84, 93, 228 N.W. 593, 596-97 (1930). *474 Further, the legislature has not prohibited simultaneous candidacies for the offices of alderman and mayor. Section 66.11(2), Stats., provides that a member of a city council "shall be eligible for any elective office," except for an office created during the councilman's term or the selection to which is vested in the council. An incumbent alderman, therefore, may run for mayor. When the common law declares two offices incompatible, a person can hold but one; however, if a public official accepts another office incompatible with that which he holds, he thereby vacates the first office. Martin v. Smiths, 239 Wis. 314, 326, 1 N.W.2d 163, 169 (1941). Absent legislation to the contrary, we therefore conclude that an alderman, eligible to run for mayor, may choose between the two offices if elected to both. This choice is present whether the candidate runs for mayor in the midst of his aldermanic term or whether he runs at a time that coincides with the aldermanic election.
Whether a candidate is prohibited from actually seeking both offices by virtue of the restrictions of sec. 8.21, Stats., is not an issue here. That statute requires a candidate to declare that he or she will qualify for the office sought if nominated and elected. Hackbarth was a candidate only for the office of mayor. That statute does not bear on the issue of an elector's intent in marking the ballot.
Finally, we decline to resolve whether a court may take testimony from a voter to determine how he voted as it is unnecessary to the resolution of the dispute before us.[2]
*475 By the Court.Judgment affirmed.
NOTES
[] Petition to review denied. BABLITCH, J., took no part.
[1] Section 5.01(4)(a), Stats., provides that if the candidates receive an equal number of votes, the winner shall be chosen by lot.
[2] In an 1854 decision involving a disputed election for district attorney in Rock County, our supreme court stated: In New York, . . . the elector who has cast the . . . ballot may be sworn as to who was intended by it. But this is pushing the doctrine to a great extent, further, we think, than considerations of public policy and the well being of society will warrant; . . . .

Attorney General ex rel. Carpenter, 4 Wis. 438, *420, 450, *429-30 (citation omitted).
In a more recent decision answering what was described as a "somewhat hypothetical question: Can a voter, after an election, under any circumstances testify as to how he voted"? our supreme court said: "We conclude that a voter may waive his personal privilege and testify under some circumstances." Kaufmann v. La Crosse City Bd., 8 Wis. 2d 182, 187, 98 N.W.2d 422, 424 (1959).
We also note that the Wisconsin Constitution, art. III, sec. 3, was adopted effective April, 1986, to provide: "All votes shall be by secret ballot." The attorney general's brief on behalf of the State Elections Board points to the potential for mischief if a voter can or must testify to his intent knowing in advance the effect of his testimony on the election outcome.