Patricia H. ROTH, Petitioner-Respondent-Petitioner,

v.

LAFARGE SCHOOL DISTRICT BOARD OF CANVASSERS, Respondent-Respondent,

Gail J. MULLER, Third Party-Petitioner-Appellant.

Supreme Court

*No. 02–0542. Oral argument October 8, 2003.—*
*Decided February 4, 2004.*

2004 WI 6

(Also reported in 677 N.W.2d 599.)

For the petitioner-respondent-petitioner there were briefs by *Christopher J. Blythe* and *Lawton & Cates, S.C.,* Madison, and oral argument by *Christopher J. Blythe.*

For the third party-petitioner-appellant there was a brief by *George C. Wilbur,* LaFarge, and oral argument by *George C. Wilbur.*

For the respondent-respondent there was a brief (in the court of appeals) by *David L. Jenkins* and *Jenkins and Stittleburg,* Viroqua.

¶ 1. N. PATRICK CROOKS, J.   The petitioner, Patricia H. Roth (Roth), seeks review of a published court of appeals' decision, reversing the order of the Vernon County Circuit Court, which had concluded that a "no" vote cast in the LaFarge School District referendum should not be counted. Because we conclude that, on the ballot in question consistent with Wis. Stat. § 7.50(2)(c) (1999–2000),[1] there is a qualifying mark in a qualifying place, we hold that the court of appeals' decision should be affirmed and that, using § 7.50(2)(c), the "no" vote should be counted. We conclude that with proper application of § 7.50(2)(c) the intent of the voter becomes readily ascertainable in this case. We further conclude that the Board of Canvassers (Board) did not properly apply the statute since, on the ballot in question, there is a qualifying mark in a qualifying place. The November 2000 referendum thus ended in a tie vote, and the question of funding for school improvements was defeated.

---

[1] Unless otherwise indicated, all references to Wisconsin Statutes are to the 1999–2000 edition.

337

I

¶ 2.  The November 7, 2000 referendum was held to determine whether a project for school improvements should proceed.[2] After the polls closed, the referendum ballots were counted. According to the returns, 392 votes were cast for the referendum, and 392 votes were cast against the referendum. Wisconsin

---

[2] The referendum ballot presented the voters with the following question:

"Shall the following Initial Resolution be approved?"

Initial Resolution Authorizing General Obligation Bonds of the School District of LaFarge in an Amount Not to Exceed $2,250,000

The School Board of the School District of LaFarge (the "District") hereby resolves as follows:

Under and by virtue of the provisions of Chapter 67, Wisconsin Statutes, the District shall issue its general obligation bonds, in a sum not to exceed the amount of $2,250,000, for the following purposes:

(a) Constructing and equipping a locker room and fitness room addition totaling approximately 2,100 square feet to an existing Elementary, Junior High and Senior High Buildings located at 301 West Adams Street, LaFarge, Wisconsin;

(b) Major/minor remodeling of existing Elementary, Junior and Senior High complex, including roof repair, asbestos removal, installation of elevator, lift and ramps for ADA accessibility, boiler replacement, window replacement, HVAC modifications, electrical upgrades and other general remodelling;

(c) Bus garage flooring, parking and paving, drain tile and earth work and other fixed equipment; and

(d) Architect, engineering, legal and closing costs

At the bottom of the ballot, the word "yes" appeared with a box to the right of it, indicating the space for voters to mark. Similarly, the word "no" appeared with a box to the right of it.

Stat. § 5.01(4)(d) directs that when the voting results in a tie, the referendum has been defeated.[3]

¶ 3. Roth, an elector of the LaFarge School District who voted in the referendum, requested a recount of the ballots pursuant to Wis. Stat. § 9.01.[4] The Board conducted a recount on November 11, 2000. The recount resulted in a tie, as 389 votes were cast for the referendum and 389 votes were cast against the referendum. Thus, the Board declared that the referendum had failed.

¶ 4. During the recount, the Board disqualified three "yes" votes and three "no" votes.[5] Of the three "yes" votes, one was disqualified because the initials of only one poll worker were on the ballot, as opposed to the two sets of initials that are required by Wis. Stat. § 7.50(2). Of the three "no" votes, one was disqualified because the Board determined that the mark had been erased and, thus, should not be counted under § 7.50(2)(c). Gail Muller (Muller), an elector of the LaFarge School District who voted in the referendum,

---

[3] Wisconsin Stat. § 5.01(4)(d) provides, in relevant part: If a question is submitted to the electors and an equal number of votes are cast for and against adoption, the question fails adoption.

[4] Wisconsin Stat. § 9.01 provides, in relevant part: (1) Petition; fees; general procedures. (a) Any candidate voted for at any election or any elector who voted upon any referendum question at any election may request a recount.

[5] The record indicates that the Board disqualified three absentee ballots due to the electors' failure to comply with the directions. Two votes were disqualified for failure to be witnessed, and one was disqualified due to the absence of an elector's signature on the absentee envelope. This resulted in the disqualification of one "yes" vote and two "no" votes. It is not specified why the other votes were disqualified.

339

was present at the recount, and questioned the Board's assessment that the mark had been erased.[6]

¶ 5. Pursuant to Wis. Stat. § 9.01(6),[7] Roth filed a notice of appeal in the Vernon County Circuit Court, asserting that the "yes" vote was improperly disqualified. Muller filed a motion for intervention. Muller stated that she had an interest in the referendum's outcome and, as no other party represented her interests, she would be harmed if the circuit court prevented her from intervening. Moreover, Muller attached to her motion a proposed counterclaim to the effect that the "no" vote was improperly disqualified. Roth opposed Muller's motion to intervene, stating that Muller should not be allowed to oppose Roth's claim or raise new legal issues, because she failed to comply with the time directives of § 9.01(6)(a).

¶ 6. Vernon County Circuit Judge Michael Rosborough determined that Muller should not be allowed to intervene because she was time barred. The circuit court further held that the "yes" vote should have been counted, despite the fact that some of the procedural requirements were not followed. The circuit court

---

[6] With respect to the "no" vote, the recount minutes state the following: "One ballot looks erased—3 canvassers cannot determine with reasonable certainty what was intended. Ballot set aside. (#0002). Everyone in audience witnessed ballot—no challenges but a question by one (Gayle Muller)."

[7] Wisconsin Stat. § 9.01(6) provides, in relevant part:

(a) Within 5 business days after completion of the recount determination by the board of canvassers in all counties concerned, or within 5 business days after completion of the recount determination by the chairperson of the board or the chairperson's designee whenever a determination is made by the chairperson or designee, any candidate, or any elector when for a referendum, aggrieved by the recount may appeal to circuit court.

noted that Wis. Stat. § 5.01(1) emphasizes that statutes are to be construed so as to give effect to the intent of the voter. Muller appealed.

¶ 7.  The court of appeals[8] concluded that the circuit court erred when it prevented Muller from asserting her own claim. The court noted that the deadline for filing an appeal is applicable to aggrieved parties only. The court of appeals noted that Muller was not an aggrieved party, as she opposed the referendum and the recount resulted in its failure. Thus, Muller had no standing to appeal the referendum results. Nevertheless, the court of appeals reasoned that Muller satisfied the necessary requirements to intervene as a matter of right, and should be able to raise her own claim. The court of appeals further concluded that the circuit court correctly decided that the "yes" vote should have been counted. However, because the "no" vote was not part of the record, the court of appeals remanded the cause to the circuit court, for a determination of whether the Board's conclusion that voter intent could not be ascertained from the ballot, was supported by substantial evidence.

¶ 8.  Circuit Judge Michael McAlpine[9] found that the Board did not misinterpret Wis. Stat. § 7.50(2)(c).[10]

---

[8] The decision of this court is later referred to as *Roth v. LaFarge Sch. Dist. Bd. of Canvassers*, 2001 WI App 221, 247 Wis. 2d 708, 634 N.W.2d 882 (*Roth I*).

[9] Pursuant to Wis. Stat. § 801.58, Muller filed a request for substitution of a new judge for Judge Michael Rosborough. Judge Michael McAlpine was subsequently assigned to this matter.

[10] Wisconsin Stat. § 7.50(2)(c) provides, in relevant part:

(2) Ascertainment of intent. All ballots cast at an election which bear the initials of 2 inspectors shall be counted for the

The circuit court noted that determining voter intent is a finding of fact. The court determined that there was substantial evidence, pursuant to Wis. Stat. § 9.01(8),[11] supporting the Board's decision. Muller appealed.

person or referendum question for whom or for which they were intended, so far as the electors' intent can be ascertained from the ballots notwithstanding informality or failure to fully comply with other provisions of chs. 5 to 12.

. . . .

    (c) If an elector marks a ballot with a cross (X), or any other marks, as I, A, V, O, /, ✔, +, within the square to the right of a candidate's name, or any place within the space in which the name appears, indicating an intent to vote for that candidate, it is a vote for the candidate whose name it is opposite.

[11] Wisconsin Stat. § 9.01(8) provides, in relevant part:

    Unless the court finds a ground for setting aside or modifying the determination of the board of canvassers or the chairperson of the board or chairperson's designee, it shall affirm the determination. The court shall separately treat disputed issues of procedure, interpretations of law and findings of fact. The court may not receive evidence not offered to the board of canvassers or the chairperson or chairperson's designee except for evidence that was unavailable to a party exercising due diligence at the time of the recount or newly discovered evidence that could not with due diligence have been obtained during the recount, and except that the court may receive evidence not offered at an earlier time because a party was not represented by counsel in all or part of a recount proceeding. . . . The court shall set aside or modify the determination if it finds that the board of canvassers or the chairperson or chairperson's designee has erroneously interpreted a provision of law and a correct interpretation compels a particular action. If the determination depends on any fact found by the board of canvassers or the chairperson or chairperson's designee, the court may not substitute its judgment for that of the board of canvassers or the chairperson or designee as to the weight of the evidence on any disputed finding of fact. The court shall set aside the determination if it finds that the determination depends on any finding of fact that is not supported by substantial evidence.

¶ 9. The court of appeals[12] concluded that the circuit court and the Board erroneously interpreted and applied Wis. Stat. § 7.50(2)(c). The court of appeals concluded that § 7.50(2)(c) is ambiguous, as it lends itself to two possible interpretations. It could require both the presence of a mark and an intent to vote. Conversely, § 7.50(2)(c) could be interpreted to stand for the proposition that any mark indicates an intent to vote. While attempting to resolve the ambiguity within § 7.50(2)(c), the court of appeals noted that the legislature prefers to validate ballots and save them from invalidity. The court of appeals reasoned that § 7.50(2)(c) provides that there is an intent to vote when there is a mark in the appropriate space. Thus, the court of appeals concluded that, since there was a mark in the space designated for a "no" vote, the "no" vote should be counted, a decision that resulted in a tie vote on the referendum.

¶ 10. The LaFarge School District held a referendum in November 2003. At oral argument, it was suggested that the question of whether the "no" vote should be counted may be rendered moot by the outcome of the November 2003 referendum.[13] Since that referendum has now been conducted, under the circumstances that now exist, we will address the issue of

[12] The decision of this court is later referred to as *Roth v. LaFarge Sch. Dist. Bd. of Canvassers,* 2002 WI App 309, 259 Wis. 2d 349, 655 N.W.2d 471 *(Roth II).*

[13] A newspaper report indicates that the November 2003 LaFarge School District referendum failed. With respect to whether up to $720,000 in bonds should be issued to make improvements and upgrade existing buildings and library holdings, 138 votes were cast in favor of the referendum and 265 votes were cast against the referendum. *LaFarge Referendum,* Wisconsin State Journal, Nov. 6, 2003, at B3.

whether the Board properly applied Wis. Stat. § 7.50(2)(c), in regard to the referendum held on November 7, 2000.

## II

¶ 11. As an initial matter, we must address Roth's allegation that the court of appeals violated the law of the case doctrine. Roth asserts that the court in *Roth v. LaFarge Sch. Dist. Bd. of Canvassers,* 2001 WI App 221, 247 Wis. 2d 708, 634 N.W.2d 882 (*Roth I*) concluded that the Board's determination was a finding of fact, which the circuit court should review using Wis. Stat. § 9.01(8). Roth further argues that the *Roth I* court stated that Wis. Stat. § 7.50(2)(cm) does not stand for the proposition that an apparent erasure must be counted. Roth claims that the court of appeals ignored its own directives in *Roth v. LaFarge Sch. Dist. Bd. of Canvassers,* 2002 WI App 309, 259 Wis. 2d 349, 655 N.W.2d 471 (*Roth II*), when it concluded that the "no" vote should have been counted as a matter of law. Moreover, she claims that in *Roth II* the court stated that, according to 7.50(2)(cm), an apparent erasure signifies an intent to vote. Roth argues that the court of appeals violated the law of the case doctrine, as *Roth I* and *Roth II* have inconsistent holdings.

██

¶ 12. We are not bound by the law of the case doctrine. In *Univest Corp. v. Gen. Split Corp.,* 148 Wis. 2d 29, 38–39, 435 N.W.2d 234 (1989), we noted that "the law of the case doctrine is not a rule to which this court is bound by any legislative enactment, nor is it a rule to be inexorably followed in every case." We further held that "once the case is before us, it is within our discretion under these standards to review any substan-

tial and compelling issue which the case presents, regardless of whether a prior decision established the law of the case." *Id.* at 39. Thus, we are in no way bound by the court of appeals' determination in this matter, but certainly we benefit from the decisions of the court of appeals, the circuit court, and the Board of Canvassers.

### III

¶ 13. We now address whether Wis. Stat. § 7.50(2)(c) was correctly applied in this case. As noted previously, during oral argument, Muller's attorney stated that the LaFarge School District would be holding a new referendum in November 2003. Muller's` attorney stated that if the new referendum passed, the results of the November 2000 referendum would be negated. Thus, he stated, the issue before this court could be rendered moot. A case is moot if a decision in the matter will not have any practical effect upon an existing legal controversy. *Milwaukee Police Ass'n v. Milwaukee,* 92 Wis. 2d 175, 183, 285 N.W.2d 133 (1979).

¶ 14. Nevertheless, this court may address a moot issue if: (1) the issue is of great public importance; (2) the situation occurs so frequently that a definitive decision is necessary to guide circuit courts; (3) the issue is likely to arise again and a decision of the court would alleviate uncertainty;. or (4) the issue will likely be repeated, but evades appellate review because the appellate review process cannot be completed or even undertaken in time to have a practical effect on the parties. *State ex rel. Hensley v. Endicott,* 2001 WI 105, ¶ 5, 245 Wis. 2d 607, 629 N.W.2d 686. Whether the

LaFarge School District's referendum passes is an important issue, and this court should render a decision in this case, regardless of whether the matter is moot or not.

¶ 15. We review the court of appeals' decision, which reviewed the decision of the Board, not the decision of the circuit court. *Univ. of Wisconsin v. Dane County*, 2000 WI App 211, ¶ 10, 238 Wis. 2d 810, 618 N.W.2d 537. The Board of Canvasser's determination was, in this case, a determination as a matter of law, since it involved the interpretation and application of a statute. More specifically, we must determine whether the Board of Canvassers committed a legal error with respect to its interpretation and application of Wis. Stat. § 7.50(2)(c).[14] This court reviews the legal conclusions of such a board de novo. *Bar Admission of Vanderperren*, 2003 WI 37, ¶ 20, 261 Wis. 2d 150, 661 N.W.2d 27; *"K" Care, Inc. v. Town of Lac du Flambeau*, 181 Wis. 2d 59, 65, 510 N.W.2d 697 (Ct. App. 1993).

¶ 16. To aid in our discussion, a description of the ballot in question is warranted. In the box to the right of the word "no" on the ballot, there is a clearly visible slash (\) mark written in pencil. *See* attached exhibit at page 354.

¶ 17. Roth asserts that the *Roth II* court misinterpreted Wis. Stat. § 7.50(2)(c). Roth contends that there must be both a mark and an intent to vote by the voter, in order for a vote to qualify under § 7.50(2)(c).

---

[14] Because our focus is on whether the Board correctly interpreted and applied Wis. Stat. § 7.50(2)(c), we decline to utilize *DeBroux v. Bd. of Canvassers for City of Appleton*, 206 Wis. 2d 321, 557 N.W.2d 423 (Ct. App. 1996), which focuses on a board's findings of fact.

Roth states that this construction is supported by the language in § 7.50(2). According to Roth, the legislature intended to provide for the Board's subjective analysis when voter intent was not clear. Roth further asserts that the interpretation proposed by *Roth II,* that even apparent erasures must be counted, flies in the face of Wis. Stat. § 5.01(1).[15] Roth argues that, under this interpretation, even a flaw in the paper would have to be counted as a vote.

¶ 18.   Muller counters that the legislature's intent, by enacting Wis. Stat. § 5.01(1), was to give effect to the will of voters. Muller contends that an erasure must actually remove the mark. If there is a mark, Muller asserts that the Board must count the mark as a vote, as the legislature did not give the Board discretion to declare that a visible mark is an erasure. Muller states that, according to the requirements set forth in Wis. Stat. § 7.50(2)(c), the "no" vote should be counted. Section 7.50(2)(c) states, in relevant part, that a vote should be counted "(i)f an elector marks a ballot with a cross (X), or any other marks, as I, A, V, O, /, ✔, +, within the square to the right of the candidate's name, . . . indicating an intent to vote for that candidate." Muller contends that the language of § 7.50(2)(c) is not qualified by the clause "unless it is light or looks erased." Muller asserts that the *Roth II* court's interpretation of § 7.50(2)(c) comports with long established Wisconsin precedent to give effect to the will of the voter, as exemplified in voter intent cases such as *State*

---

[15] Wisconsin Stat. § 5.01(1) provides, in relevant part: Except as otherwise provided, chs. 5 to 12 shall be construed to give effect to the will of the electors, if that can be ascertained from the proceedings, notwithstanding informality or failure to fully comply with some of their provisions.

347

*ex rel. Wood v. Baker,* 38 Wis. 71 (1875), and *Ollmann v. Kowalewski,* 238 Wis. 574, 300 N.W. 183 (1941).

¶ 19.   Wisconsin courts have consistently noted that they do not want to deprive voters of the chance to have their votes counted. In *State ex rel. Wood,* 38 Wis. at 84, this court was confronted with the question of whether a defective voter registry should result in the disenfranchisement of voters. We stated that a statute provided for voter supervision of the process of voter registry, but the fact that the registry was defective did not mean that the votes should not be counted. *Id.* at 88. The statute allowing the voters' voluntary supervision of the registry had to be construed, so as to render the right of suffrage unencumbered and unimpaired. *Id.*

¶ 20.   In *State ex rel. Blodgett v. Eagan,* 115 Wis. 417, 418, 91 N.W. 984 (1902), two ballots were originally excluded from an election for the office of assessor because the voters wrote in, in longhand, the name of one candidate, yet failed to cross out the name of the candidate whom they did not intend to elect. After discussing Wisconsin's tradition of giving effect to the will of the voter, this court stated that the voter's intention that can be discerned from the ballot itself should control. *Id.* at 419–20. We concluded that "the voter shall not be disenfranchised because of mere mistake, but his intention shall prevail . . . ." *Id.* at 421.

¶ 21.   In *State ex rel. Symmonds v. Barnett,* 182 Wis. 114, 129, 195 N.W. 707 (1923), we concluded that registered voters, whose names had been omitted from the voter registry lists through the fault of election officials, should not have their votes invalidated. The *Barnett* opinion noted the *State ex rel. Wood* reasoning, which stated that voters should not be deprived of their constitutional right to vote simply because election

348

officials have failed to perform their duties. *Id.* at 132. Although a statutory provision provided that ballots must be indorsed with the initials of a ballot clerk in order to be declared valid, the fact that this provision was not complied with did not invalidate the absentee voter ballots at issue. *Id.* We noted that to disqualify the ballots would deprive the voters of their constitutional rights, because of the negligence of the election officers. *Id.*

¶ 22. In *State ex rel. Graves v. Wiegand,* 212 Wis. 286, 288, 249 N.W. 537 (1933), the inspectors at several election precincts failed to comply with a statute that directed the appropriate procedures that were to be used when returning ballots to the county clerk. Nevertheless, this court held that the votes should be counted. *Id.* at 296. We stated that the primary concern was the protection of the rights and interests of the voters. *Id.* at 292. Voting statutes are to be construed so as to give effect to the intent of the voter, notwithstanding the fact that there was a failure to comply with some of the provisions governing elections. *Id.* Moreover, we noted, significantly, that ballots are the best evidence of the intention of voters. *Id.* at 293.

¶ 23. In *Ollmann,* 238 Wis. at 577–78, this court refused to disqualify ballots where two ballot clerks each wrote their own initials and the initials of the other clerk on each ballot that was cast. Although this practice violated the statute governing the initialing of the ballots, we noted that to construe the statute as mandatory would be unconstitutional in this case. *Id.* at 578. We analogized the situation to the circumstances that were present in *State ex rel. Wood* and stated that the failure on the part of the election officials to perform their duties should not deprive the voters of

349

their constitutional right to vote. *Id.* at 579. A ballot legally cast by a voter cannot be rejected, if it expresses the will of the voter. *Id.* at 580. Moreover, this court stated that a ballot could not be randomly withdrawn from consideration simply because the number of votes cast could not be reconciled with the number of names checked off of the registry. *Id.* The voters would be disenfranchised if their ballots were removed from consideration through no fault of their own. *Id.*

¶ 24.   In *Petition of Leuch,* 244 Wis. 305, 317, 12 N.W.2d 61 (1943), we held that the voters who cast their ballots in the election for municipal judge should not be disenfranchised, because the election commissioners did not have enough time to reprint the ballots so as to include the name of a new candidate. Although there was no statutory authority for the board's action in printing stickers and pasting them on the ballots, the statutory framework for elections should be construed so as to give effect to the will of the voters. *Id.* at 314. We further noted a relevant statutory provision, which stated that ballots should be counted for the persons for whom they were intended when voter intent can be ascertained. *Id.*

¶ 25.   In *Hackbarth v. Erickson,* 147 Wis. 2d 467, 433 N.W.2d 266 (1988), the court of appeals gave effect to the will of the voter even when the error was due to the voter's own mistake. In *Hackbarth,* the court of appeals declined to disqualify eight ballots that were marked with an "X" in the box after the mayoral candidate's name, yet also contained the candidate's name as a write-in for the position of alderman. *Id.* at 469. Noting Wisconsin's longstanding tradition of giving effect to the will of the voter, the court rejected the idea that the ballot markings could be attributed to the mistake or indecision of the voter. *Id.* at 473.

¶ 26. We recognize that many of the abovementioned cases involve mistakes committed by election officials, and not whether a voter apparently expressed his or her intent, as was at issue in this case. Nevertheless, we think Wisconsin's position on recognizing voter intent is clear. It is evident that this court has consistently placed a premium on giving effect to the will of the voter. Thus, we conclude that the Board legally erred when it misapplied Wis. Stat. § 7.50(2)(c), resulting in the disqualification of the "no" vote. The Board may use its discretion and make findings only when the standards of a statute do not apply. By enacting § 7.50(2)(c), the legislature attempted to minimize a board's discretion. Here, § 7.50(2)(c) applies, as there is a qualifying mark in a qualifying place on the ballot at issue.

¶ 27. We conclude that with proper application of Wis. Stat. § 7.50(2)(c) the intent of the voter becomes readily ascertainable in this case. Section 7.50(2)(c) provides that a vote will be counted if a cross, slash, or other mark similar to the eight examples listed in the statute is present in a qualifying place on the ballot. An examination of the ballot in question reveals that, at the very least, there is a slash through the box to the right of the word "no." Pursuant to § 7.50(2)(c), the mark was made in a qualifying place on the ballot, as it was placed in the box to the right of the word "no." Because there is a qualifying mark in a qualifying place on the ballot, the vote should be counted, so as to give effect to the will of the voter.

¶ 28. Roth asserts that the reasoning in *Schmidt v. West Bend Bd. of Canvassers*, 18 Wis. 2d 316, 118 N.W.2d 154 (1962) appropriately resolves the question before us. In *Schmidt,* we were confronted with the

351

question of whether a cancelled voting mark should be counted as a vote cast for that candidate. *Id.* at 321. The ballot in question contained a cross in the square opposite a mayoral candidate, which was rendered barely visible by a heavy shading that filled the square entirely. *Id.* In contrast, the squares for the three other offices on the ballot were marked with a simple "X." *Id.* In *Schmidt,* we stated that the circuit court reasonably concluded that the shading, which obliterated the entire square, reflected the voter's effort to cancel his or her vote for the mayoral candidate. *Id.*

¶ 29. We disagree that the facts in this case may be likened to the circumstances in *Schmidt.* In *Schmidt,* there was an attempt to achieve a complete obliteration of the vote. Moreover, the ballot in *Schmidt* contained other marks that indicated an intent to vote for candidates running for other offices. In this case, there is a mark that fits within the category of those enumerated by Wis. Stat. § 7.50(2)(c). In contrast to *Schmidt,* there is no indication that the voter in this case attempted to remove his or her vote from consideration. Moreover, the voter in this case was required to vote for only one issue. Thus, there is no further example of the voter's marks for other candidates or issues, rendering a comparison between the mark in question and other marks made by the voter impossible in this situation. Due to the significant differences between *Schmidt* and the present circumstances, we conclude that *Schmidt* is distinguishable from the facts of this case. Because the ballot in this case indicates an intent to vote "no" on the referendum, we conclude that this vote should be counted.

## IV

¶ 30. We affirm the court of appeals' decision and hold that, consistent with Wis. Stat. § 7.50(2)(c), the "no" vote should be counted. We conclude that with proper application of § 7.50(2)(c) the intent of the voter becomes readily ascertainable in this case. We further conclude that on the ballot in question, there is a qualifying mark in a qualifying place. The Board of Canvassers did not properly apply § 7.50(2)(c); the November 2000 referendum, therefore, resulted in a tie vote, and the question of funding for school improvements was defeated.

*By the Court.*—The decision of the court of appeals is affirmed.

# OFFICIAL REFERENDUM BALLOT

## Tuesday, November 7, 2000

**NOTICE TO ELECTORS: THIS BALLOT MAY BE INVALID UNLESS INITIALED BY TWO (2) ELECTION INSPECTORS. IF CAST AS AN ABSENTEE BALLOT, THE BALLOT MUST BEAR THE INITIALS OF THE MUNICIPAL CLERK.**

If you desire to vote on the question, make a cross (x) in the square beneath the question after "YES" if in favor of the question, or make a cross (x) in the square after "NO" if opposed to the question.

"Shall the following Initial Resolution be approved?"

INITIAL RESOLUTION AUTHORIZING
GENERAL OBLIGATION BONDS OF
THE SCHOOL DISTRICT OF LA FARGE
IN AN AMOUNT NOT TO EXCEED $2,250,000

The School Board of the School District of La Farge (the "District") hereby resolves as follows:

Under and by virtue of the provisions of Chapter 67, Wisconsin Statutes, the District shall issue its general obligation bonds, in a sum not to exceed the amount of $2,250,000, for the following purposes:

(a) Constructing and equipping a locker room and fitness room addition totaling approximately 2,100 square feet to an existing Elementary, Junior High and Senior High Buildings located at 301 West Adams Street, La Farge, Wisconsin;

(b) Major/minor remodeling of existing Elementary, Junior and Senior High complex, including roof repair, asbestos removal, installation of elevator, lift and ramps for ADA accessibility, boiler replacement, window replacement, HVAC modifications, electrical upgrades and other general remodelling;

(c) Bus garage flooring, parking and paving, drain tile and earth work and other fixed equipment; and

(d) Architect, engineering, legal and closing costs

YES ☐          NO ☒

354

¶ 31. ANN WALSH BRADLEY, J. (*concurring*). I, like the majority, would count this vote. However, I reach this conclusion in a manner very different from that embraced by my colleagues. We part ways because I believe that the majority accurately describes only a part of the picture. As a result, it ignores a standard of review, which requires here that the Board of Canvasser's findings of fact be upheld. Accordingly, I respectfully concur.

¶ 32. We should have learned long ago that by accurately describing only a part of the picture, we run the risk of distorting the whole. So it was for those who contested the claim that the world was round. By accurately describing only that part which was visible and flat, they distorted the whole.

¶ 33. And, so it is with the majority. By accurately describing part of the ballot as containing "a clearly visible slash mark ( \ ) written in pencil" (Majority op., ¶ 16) but failing to describe the rest of the picture, the majority runs the risk of distorting the whole.

¶ 34. The whole, as viewed by the Board of Canvassers, depicts an indentation on the ballot of a forward slash mark ( / ), crossing the light backward slash mark described by the majority and forming a completed (X). It is this colorless forward slash mark that caused the Board to make its finding of fact that the mark constituted an erasure.

¶ 35. In fairness to the majority, it is unclear whether the indentation on the ballot constituting the colorless (or nearly colorless) forward slash mark occurred because of a malfunctioning mechanical pencil or because of an erasure. What is clear, however, is that the Board is the trier of fact, and that pursuant to Wis. Stat. § 9.01(8), the court may not substitute its own view of the facts for that of the Board of Canvassers.

*DeBroux v. Bd. of Canvassers for the City of Appleton,*
206 Wis. 2d 321, 331, 557 N.W.2d 423 (Ct. App. 1996).

¶ 36.   Wisconsin Stat. § 9.01(8), which details the
scope of appellate review, provides in relevant part that:

> [T]he court may not substitute its judgment for that of
> the board of canvassers or the chairperson or designee
> as to the weight of the evidence on any disputed finding
> of fact. The court shall set aside the determination if it
> finds that the determination depends on any finding of
> fact that is not supported by substantial evidence.

¶ 37.   Here, the Board of Canvassers made a fac-
tual finding. With respect to the ballot in question, the
recount minutes state the following:   "one ballot looks
erased—3 canvassers cannot determine with reason-
able certainty what was intended. Ballot set aside.
(#0002) . . . ."

¶ 38.   In framing the issue in this case, the major-
ity opinion ignores this factual finding. It portrays the
case as dealing only with an interpretation of law, the
statutory interpretation of Wis. Stat. § 7.50(2)(c). Ma-
jority op., ¶ 15. In doing so, it contravenes the explicit
language of Wis. Stat. § 9.01(8), which mandates that
"[t]he court shall separately treat disputed issues of
procedure, interpretations of law and findings of fact."

¶ 39.   After reviewing the ballot, I would conclude
that the Board's finding is supported by substantial
evidence. I have attached to this opinion an exhibit
from the petitioner's brief, which is a dark photocopy of
the disputed ballot. It reveals an "X" like figure, with the
upper right side of the "X" missing. The original mark
cannot be seen in the majority's photocopy of the ballot.
It can be seen in part, however, in the darker photocopy
submitted by the petitioner.

¶ 40. The fact that the backward slash portion of the "X" is very light and the forward slash indentation is partially missing provides substantial evidence to support the factual finding of an erasure. Accordingly, I would defer to the Board's factual finding.

¶ 41. Recognizing that the mark is an erasure, the next step is to determine which statute governs. The only statute that specifically addresses erasures in the context of elections is Wis. Stat. § 7.50(2)(cm).[1] Admittedly, it is unclear from the language of the statute whether it is even applicable to the present case. Wis. Stat. § 7.50(2)(cm) speaks to ballots involving one or more different candidates for the same office, not one-issue referendums.

¶ 42. If the statute does not apply, the legislature has not spoken on the issue and we must look to the principle of inclusion (the legislative preference for counting ballots) for guidance. Assuming that Wis. Stat. § 7.50(2)(cm) does apply, however, the statute narrowly circumscribes when erasures are not to be counted.

¶ 43. Two conditions must be met before the vote is disqualified: (1) "the elector makes another mark next to the name of one or more candidates for the same office," and (2) "counting of the mark would result in an excess number of votes cast for the office." Wis. Stat. § 7.50(2)(cm). Here, neither of those conditions precedent to disqualification is met. There are no other marks on the ballot. Further, there is no indication in the record that counting the vote would result in an

---

[1] Wisconsin Stat. § 7.50(2)(cm) provides:

Any apparent erasure of a mark next to the name of a candidate may not be counted as a vote for that candidate if the elector makes another mark next to the name of one or more different candidates for the same office and counting of the mark would result in an excess number of votes cast for the office.

357

excess number of votes cast. Because the conditions precedent for disqualifying a vote as an erasure are not met, I again return to the principle of inclusion.

¶ 44. Wisconsin's general principle of inclusion supports the conclusion of counting the vote in this case. As the majority correctly recognizes, this principle is supported by our precedent, "Wisconsin courts have consistently noted that they do not want to deprive voters of the chance to have their votes counted." Majority op., ¶¶ 19–25 (*citing e.g., State ex. rel. Wood v. Baker,* 38 Wis. 71 (1875), *Ollmann v. Kowalewski,* 238 Wis. 574, 300 N.W. 183 (1941), *Hackbarth v. Erickson,* 147 Wis. 2d 467, 433 N.W.2d 266 (Ct. App. 1988)).

¶ 45. In sum, I believe that the Board's finding of an erasure should have been reviewed as a question of fact and not law. I would defer to that finding because an examination of the ballot reveals that it is supported by substantial evidence. However, because the conditions precedent to the statute governing erasures are not present, and Wisconsin's general principle of inclusion controls, I would count the vote.

# OFFICIAL REFERENDUM BALLOT
## Tuesday, November 7, 2000

NOTICE TO ELECTORS: THIS BALLOT MAY BE INVALID UNLESS INITIALED BY TWO (2) ELECTION INSPECTORS. IF CAST AS AN ABSENTEE BALLOT, THE BALLOT MUST BEAR THE INITIALS OF THE MUNICIPAL CLERK.

If you desire to vote on the question, make a cross (x) in the square beneath the question after "YES" if in favor of the question, or make a cross (x) in the square after "NO" if opposed to the question.

"Shall the following Initial Resolution be approved?"

INITIAL RESOLUTION AUTHORIZING
GENERAL OBLIGATION BONDS OF
THE SCHOOL DISTRICT OF LA FARGE
IN AN AMOUNT NOT TO EXCEED $2,250,000

The School Board of the School District of La Farge (the "District") hereby resolves as follows:

Under and by virtue of the provisions of Chapter 67, Wisconsin Statutes, the District shall issue its general obligation bonds, in a sum not to exceed the amount of $2,250,000 for the following purposes:

(a) Constructing and equipping a locker room and fitness room addition totaling approximately 2,100 square feet to an existing Elementary, Junior High and Senior High Buildings located at 301 West Adams Street, La Farge, Wisconsin;

(b) Major/minor remodeling of existing Elementary, Junior and Senior High complex, including roof repair, asbestos removal, installation of elevator, lift and ramps for ADA accessibility, boiler replacement, window replacement, HVAC modifications, electrical upgrades and other general remodelling;

(c) Bus garage flooring, parking and paving, drain tile, and earth work and other fixed equipment; and

(d) Architect, engineering, legal and closing costs;

YES ☐        NO ☒

BRIEF EXHIBIT 3

359